JACOBS–CATHEY COMPANY,
Appellant,

v.

Thomas Carroll COCKRUM, Appellee.

No. 10–96–051–CV.

Court of Appeals of Texas,
Waco.

June 4, 1997.

Rehearing Overruled July 16, 1997.

Opinion Dissenting from Overruling of Rehearing July 16, 1997.

**290**

Nick R. Bray, Keith C. Cameron, Naman, Howell, Smith & Lee, P.C., Waco, for appellant.

John R. Francis, Temple, for appellee.

Before DAVIS, C.J., and CUMMINGS and VANCE, JJ.

## OPINION

CUMMINGS, Justice.

The appellee, Thomas Carroll Cockrum, a roofing inspector employed by the Waco Independent School District, tripped over an air conditioning belt as he was stepping onto the roof at the Waco Ninth Grade Center, lost his balance, and fell over the side of the school. Landing on his feet after the two-story fall, Cockrum shattered many of the bones in his feet and thereby suffered permanent disabilities. Cockrum sued the appellant, Jacobs–Cathey Co., an air-conditioning servicing business, for failing to remove the air conditioning belt after it had completed a service job on the roof eight months earlier. A jury found Jacobs–Cathey wholly liable for the accident and awarded Cockrum $325,000 in damages. The trial court signed a judgment in conformity with the verdict three weeks later.

Through five points of error, Jacobs–Cathey raises two issues on appeal—the legal and factual sufficiency of the evidence to support the findings (1) that a Jacobs–Cathey employee failed to remove an air conditioning belt that it had replaced, and (2) that a Jacobs–Cathey employee left the air conditioning belt that Cockrum tripped over. We affirm.

## I. FACTUAL BACKGROUND

In January 1993, Cockrum was employed by Waco ISD as a roofing inspector. His job duties required him to inspect the roofs of the district's twenty-seven campuses as well as its administrative buildings and sports facilities. When a roof on one of these buildings would leak, it was Cockrum's job either to make the necessary repairs or to report the leak to a superior so that an independent contractor could be located to make the repairs.

In the morning of January 8, 1993, Cockrum responded to a complaint that the roof at the Ninth Grade Center was leaking. He climbed onto the roof and determined that a seal around a drain on the roof needed to be patched, and he contacted A.C. Parsons Roofing, with whom Waco ISD had a contract to make various roofing repairs, to fix the leak. A.C. Parsons informed Cockrum that an employee, Rusty Wooley, would be at the school at around 1:00 or 1:30 p.m.

Cockrum left the Ninth Grade Center, but returned shortly before 1:00 to meet Wooley.

Cockrum set his ladder on the south side of the building and secured it to prevent it from slipping. He put on his boots and climbed the ladder. Once he reached the top of the building, he stepped off from the ladder and onto the roof. He then took a step with his right foot and attempted another with his left. As he brought his left foot forward, his feet became entangled and he lost his balance. Cockrum fell backwards and headfirst over the side of the roof. As he was falling, Cockrum grabbed the ladder, enabling him to turn himself upright. Cockrum, however, continued falling for approximately twenty feet until he landed on his feet.

## II. DUTY

Before proceeding with a discussion of the issues, we must address the question of whether Jacobs–Cathey owed a duty of care to Cockrum. In its original brief, Jacobs–Cathey presumed that Cockrum raised two theories of recovery at trial, namely, simple negligence and premises liability. In his "Appellee's Brief," Cockrum responded that he did not sue Jacobs–Cathey for premises liability, but only for simple negligence. Cockrum indicated, however, that Jacobs–Cathey bore a duty to him within this simple negligence theory both to remove the air conditioning belts it left on the roof *and* the air conditioning belts left on the roof by other parties. Cockrum contended that Jacobs–Cathey, pursuant to (1) a company policy of removing debris from its work sites regardless who had left it there and (2) a common-law duty imposed upon air conditioner repairmen to remove other parties' debris from their own work sites, assumed this duty to remove air conditioning belts left by third parties. In a reply brief, Jacobs–Cathey asserted that the only duty it had to Cockrum was to remove its own air conditioning belts.

It is apparent from this development in the arguments that Cockrum, by disavowing any intention to sue Jacobs–Cathey on a premises liability theory, has restricted his means of recovery to simple negligence. It is also clear that, because the parties agree that Jacobs–Cathey bore a duty to Cockrum to remove any air conditioning belts that its own employees may have left on the Ninth Grade Center's roof, Jacobs–Cathey may be liable to Cockrum if Cockrum tripped over an air conditioning belt that one of its own employees left on the roof. The remaining question to be answered, however, is whether Jacobs–Cathey employees bore a duty to remove any air conditioning belts that may have been left on the roof by another party.

### a. Company Policy

The Supreme Court has stated:

There are many instances in which it may be said, as a matter of law, that there is a duty to do something, and in others it may be said, as a matter of law, that there is no such duty. Using familiar illustrations, it may be said generally, on the one hand, that if a party negligently creates a dangerous situation it then becomes his duty to do something about it to prevent injury to others if it reasonably appears or should appear to him that others in the exercise of their lawful rights may be injured thereby. On the other hand, it may be said generally, as a matter of law, that a mere bystander who did not create the dangerous situation is not required to become the good Samaritan and prevent injury to others.

*SmithKline Beecham Corp. v. Doe,* 903 S.W.2d 347, 353 (Tex.1995) (quoting *Buchanan v. Rose,* 138 Tex. 390, 159 S.W.2d 109, 110 (1942)). As a general rule, mere bystanders have no duty to remedy a dangerous condition created by someone else. *See id.; Otis Eng'g Corp. v. Clark,* 668 S.W.2d 307, 309 (Tex.1983). However, certain relationships, such as master-servant, parent-child, or employer-employee, do impose, as a matter of law, certain duties to undertake affirmative acts in special circumstances for the benefit of another. *See Greater Houston Transp. Co. v. Phillips,* 801 S.W.2d 523, 525 (Tex. 1990); *Otis,* 668 S.W.2d at 309. Moreover, when there would otherwise be no duty on the part of the defendant to the plaintiff, the defendant assumes a duty of care to remedy any dangerous conditions that he, himself, creates. *The Science Spectrum, Inc. v. Martinez,* 941 S.W.2d 910, 912 (Tex.1997).

■ Jacobs–Cathey agrees that if it created a dangerous condition on the Ninth Grade Center's roof, it had a duty to remedy the condition. Jacobs–Cathey, however, asserts that it had no duty to remove anyone else's air conditioning belts. Cockrum argues that Jacobs–Cathey's internal policy of removing any-and-all debris from a completed work site, whether or not the debris was left by Jacobs–Cathey employees, resulted in a "special relationship" that enjoined upon it a duty to third parties who might be injured from debris left by a party other than Jacobs–Cathey.

■ The testimony at trial from several Jacobs–Cathey representatives reveals that Jacobs–Cathey employees frequently removed debris left by other parties because it took a minimal effort to remove the debris and because the potential for injury to others who might later visit the work site was great. However, a defendant's *policy* to remedy dangerous conditions he may come across does not impose a legal *duty* on him to these third parties. *See Estate of Catlin v. General Motors Corp.*, 936 S.W.2d 447, 451 (Tex. App.—Houston [14th Dist.] 1996, no writ) (on rehearing). While the members of a corporation perhaps should be lauded on a personal level for *sua sponte* establishing policies requiring its employees to affirmatively remedy dangerous conditions created by others, the enactment of these policies is insufficient to alter the legal rule that a mere bystander owes no duty of care to make safe a dangerous condition negligently or intentionally created by a third party.

We therefore conclude that any policy Jacobs–Cathey maintained requiring its employees to remove debris left at its work sites by other parties did not impose upon Jacobs–Cathey a duty to third parties injured by this unremoved debris.

#### b. Common Law Duty

■ Cockrum also asserts that Jacobs–Cathey employees, as air conditioner repairmen, owe a duty of care to make their work sites safe to third parties by remedying dangerous conditions created by other persons because of the highly technical and specialized nature of their profession. Cockrum cites *Remuda Oil & Gas Co. v. Nobles*, 613 S.W.2d 312, 316 (Tex.Civ.App.—Fort Worth 1981, no writ), for the proposition that certain professionals, such as medical doctors, due to the nature of their calling, possess a duty to provide care to parties even when the professional is a bystander. *Nobles*, however, stands only for the proposition that the standard of care for medical doctors and other professionals may be higher than a simple reasonable-person standard. *See id.* Moreover, we are aware of no authority that imputes to medical doctors or any other professionals a duty of care to another party when the doctor or other professional is a mere bystander. Similarly, air conditioner repairmen bear no duty to remove from their work sites debris left by another party even though that repairman may realize the debris poses a danger to other people who may later visit the work site. Thus, we conclude that Jacobs–Cathey employees bore no common law duty to remove debris from the roof of the Ninth Grade Center that was left by some other party.

### III. LEGAL AND FACTUAL SUFFICIENCY OF THE EVIDENCE

■ In its first, second, third, and fifth points of error, Jacobs–Cathey contends that the trial court erred in overruling its motions for instructed verdict and judgment notwithstanding the verdict. Motions for instructed verdict and judgment notwithstanding the verdict when brought by the defendant question whether there is any evidence to support each of the elements of the plaintiff/nonmovant's cause or causes of action. Therefore, in reviewing the denial of these motions, we utilize the legal sufficiency standard of review. When a complaining party raises a "no-evidence" point challenging the legal sufficiency of the evidence to support a finding that favors the party who had the burden of proof on that finding, we must sustain the finding if, considering only the evidence and the inferences supporting the finding and disregarding evidence and inferences to the contrary, any probative evidence supports it. *Browning–Ferris, Inc. v. Reyna*, 865 S.W.2d 925, 928 (Tex.1993); *American Derringer Corp. v. Bond*, 924 S.W.2d 773, 786 (Tex.

App.—Waco 1996, no writ). If there is more than a scintilla of probative evidence in the record to support the finding, the "no evidence" challenge fails. *Stafford v. Stafford,* 726 S.W.2d 14, 16 (Tex.1987). Evidence is merely a scintilla when it is so weak as to do nothing more than create a mere surmise or suspicion of a fact. *Kindred v. Con/Chem, Inc.,* 650 S.W.2d 61, 63 (Tex.1983).

■ Arguing in the alternative, Jacobs–Cathey asserts that, while the evidence may be legally sufficient to support the judgment, it is nevertheless factually insufficient. In reviewing a factual sufficiency point, we examine all of the evidence in the record, both for and against the judgment, in determining whether the finding in question is so against the great weight and preponderance of the evidence as to be manifestly wrong and unjust. *Ortiz v. Jones,* 917 S.W.2d 770, 772 (Tex.1996); *In re King's Estate,* 150 Tex. 662, 244 S.W.2d 660, 661 (1951); *Lance v. USAA Ins. Co.,* 934 S.W.2d 427, 428 (Tex. App.—Waco 1996, no writ).

Cockrum's simple negligence theory required proof of (1) facts that gave rise to Jacobs–Cathey's duty not to leave air conditioning belts on the Ninth Grade Center's roof, (2) that Jacobs–Cathey breached that duty, and (3) that Cockrum suffered injuries as a proximate result of Jacobs–Cathey's breach of that duty. *See Phillips,* 801 S.W.2d at 525. We have found that Jacobs–Cathey owed Cockrum a duty, and Jacobs–Cathey makes no argument against the assessment of damages. Instead, Jacobs–Cathey restricts its complaints to the breach and proximate cause elements of Cockrum's cause of action.

#### a. Breach

■ The following evidence addresses whether a Jacobs–Cathey employee breached his duty to remove the air conditioning belt that caused Cockrum to trip and fall off the roof at the Ninth Grade Center. We note, initially, that the only evidence that Cockrum tripped over a belt was a hearsay statement from an onlooker who reportedly commented to Cockrum after the fall, "There's a belt wrapped around your feet."

Over the course of several days beginning April 24, 1992, two employees of Jacobs–Cathey, Michael Zipperlen and Shawn Howard, replaced approximately twelve air conditioning belts on several air-conditioning units located on the roof of the Ninth Grade Center. Zipperlen testified that when he climbed onto the roof, he noticed a lot of debris, including a hub cap, tennis balls, fuses, and some air conditioner parts. With regard to the air conditioner parts, Zipperlen particularly noticed that one of the units appeared as if it had been completely disassembled with the parts scattered around the unit. Zipperlen did not recall seeing any air conditioning belts on the roof on April 24; however, Zipperlen also stated that he may have seen some belts but he simply could not remember at the time of trial that he had. Zipperlen testified that it was Jacobs–Cathey's policy to leave a clean work site after completing a job and that he and Howard, whenever they worked together, would pick up and haul away any trash they had left. In reference to this particular job, Zipperlen testified that he remembered picking up trash on the roof and throwing it over the side where he and Howard later retrieved it, stowed it in their truck, and hauled it away. Zipperlen stated that he and Howard attempted to pick up all of their trash, but that it was possible they missed a belt. Zipperlen stated that the chance that he and Howard missed a belt was "very low" because they made an effort to remove all of the trash generated from the job.

Deposition testimony from Rusty Wooley, the A.C. Parsons employee, was offered that he had been on the roof at the Ninth Grade Center with Jacobs–Cathey employees once or twice before the accident and that he had seen air conditioning belts lying on the roof after the Jacobs–Cathey employees left. Wooley stated that he never saw a Jacobs–Cathey employee place an air conditioning belt on the roof, and he admitted that he had not checked the roof prior to the time the Jacobs–Cathey employees were on it to determine if there were any air conditioning belts on the roof at an earlier time. Wooley further stated that immediately after the accident he inspected the portion of the roof from where Cockrum had fallen and that he

saw one or two air conditioning belts lying within ten feet of that location. Wooley testified that A.C. Parsons employees occasionally worked on the wiring of the air conditioning units, but that they never changed or worked on any air conditioning belts. Wooley further stated that Jacobs–Cathey employees were known for failing to remove debris from their work sites at other Waco ISD buildings.

Ray Iglehart, a maintenance supervisor for Waco ISD, testified that as he was waiting for emergency medical personnel to arrive to attend to Cockrum, he climbed onto the roof and noticed one air conditioning belt in the area where Cockrum had set his ladder. Photographs of the roof taken three to five days after the accident were also introduced into evidence showing four air conditioning belts lying on the roof.

Andrew Van Dulock, maintenance supervisor in charge of heating and air conditioning for Waco ISD, testified that prior to April 1992 Waco ISD employees replaced air conditioning belts on the Ninth Grade Center's roof and that it was possible that a Waco ISD employee may have left the belt that Cockrum tripped over on January 8, 1993. Dulock indicated that Waco ISD employees had replaced air conditioning belts on the roof as late as September 3, 1991. Testimony from Dulock and the admission of work orders on the roof for the twelve months preceding the accident indicated that no air conditioning belts were replaced by anyone from April 24, 1992, until January 8, 1993. Dulock testified that, in his experience, Jacobs–Cathey employees had not been "sloppy" in servicing Waco ISD air conditioning units or in cleaning up their work sites afterwards.

In summary, the record indicates that eight months prior to the accident Jacobs–Cathey employees Zipperlen and Howard replaced approximately twelve air conditioning belts on several air conditioning units on the Ninth Grade Center's roof. No one changed any air conditioning belts between the time Zipperlen and Howard performed these repair jobs and the time Cockrum fell from the roof. Zipperlen testified that when he first climbed onto the roof in April 1992 to service the several air conditioning units situated thereon, he noticed varied types of debris located on the roof, but he could not recall seeing any air conditioning belts.

Evidence was also adduced that a Waco ISD employee, or an employee of some independent contractor other than Jacobs–Cathey, may have left the air conditioning belt that Cockrum tripped over because Waco ISD employees and independent contractors other than Jacobs–Cathey had changed a number of air conditioning belts on the Ninth Grade Center's roof prior to April 1992. Jacobs–Cathey maintains, therefore, that the conclusion that a Jacobs–Cathey employee left the belt Cockrum tripped over is just as probable as the conclusion that some other party left the injurious air conditioning belt. Without the evidence preponderating in favor of a finding that the blame falls on a Jacobs–Cathey employee, Jacobs–Cathey contends that the evidence is necessarily legally and factually insufficient to support the judgment.

The proof brought at trial of who left the injurious air conditioning belt is circumstantial. When circumstantial evidence is relied upon, and the circumstances are equally consistent with either of two facts, no more than a scintilla of evidence supports a finding and a "no evidence" point must be sustained. *Continental Coffee Prods. Co. v. Cazarez,* 937 S.W.2d 444, 450 (Tex.1996). We disagree, however, with Jacobs–Cathey that the likelihood of a Jacobs–Cathey employee leaving the air conditioning belt over which Cockrum tripped is just as probable as the conclusion that some other party was responsible.

Zipperlen testified that he could not recall seeing any air conditioning belts on the roof in April 1992 when he serviced the air conditioning units contained thereon. Zipperlen also stated that he may have seen some but that he could no longer remember. Zipperlen was, however, able to identify a number of objects on top of the roof, namely, tennis balls, a hub cap, some fuses, and other air conditioner parts. Accordingly, the jury may have considered his memory skills sufficiently sound that he would have recalled seeing air conditioning belts on the roof if, indeed, there had been any. In addition, the photo-

graphs of the roof taken three to five days after the accident reveal a relatively clean roof with only a few types of debris located on it. Fuses, nuts and bolts, rags, and air conditioning parts can be seen, but prominent in the photographs are several air conditioning belts. They are relatively large in comparison to the other debris on the roof and are readily noticeable. The jury could have determined that the type of debris indicated in the photographs is the type of debris that was located on the roof in April 1992 after Zipperlen and Howard serviced the air conditioning units. Thus, the jury could have concluded that Zipperlen would have noticed the air conditioning belts on the roof at the time had there actually been any and that, as a necessary consequence, any belts after April 1992 were left by either Zipperlen or Howard.

Wooley testified that Jacobs–Cathey employees in the past had left their own debris on work sites after finishing different servicing jobs. The jury could have believed from this testimony that Jacobs–Cathey did not insist that its employees make certain all of their debris was removed from a work site upon completion and that Zipperlen's testimony that all of the air conditioning belts replaced on the Ninth Grade Center's roof in April 1992 were removed when they finished the job was not accurate. It is true that Dulock in his testimony indicated that he had experienced no problems with Jacobs–Cathey employees failing to remove their own debris from their work sites. But the record reveals that Wooley was Waco ISD's roofing supervisor and therefore probably visited the roofs of Waco ISD's buildings more frequently than Dulock. *See Lance*, 934 S.W.2d at 428–29 (in factual sufficiency cases, reviewing court shall neither interfere with jury's resolution of conflicts in the evidence nor pass on the weight and credibility of the witnesses). All of these facts, taken in whole, could have led the jury to conclude that the belt over which Cockrum tripped was left by a Jacobs–Cathey employee. The dissent disagrees with our analysis and opines that the evidence is both legally and factually insufficient

to support the judgment. In response to the dissent's discussion of the factual sufficiency of the evidence, we agree that the evidence supporting the jury's finding is not abundant, but we aver that, in affording the jury sufficient deference in its resolution of the factual issues before it, the conclusion necessarily follows that the finding is sufficiently supported by the evidence.

In *Lance* we considered the issue of "how much" deference juries should be provided by an appellate court when it reviews the factual sufficiency of the evidence.[1] 934 S.W.2d 427. We wrote that the reviewing court shall neither interfere with the jury's resolution of conflicts in the evidence nor pass on the weight and credibility of the witnesses' testimony. *Id.* at 428–29. We recognized that the court on appeal is not to retry the case or otherwise substitute its judgment or opinion for that of the trier of fact and that only when the judgment is *clearly* wrong and unjust, after giving due deference to the jury's determinations of the facts, may the reviewing court reverse the judgment. *Id.* at 429 (citing *Ortiz v. Jones*, 917 S.W.2d at 772). We maintained that the jury is free to believe or disbelieve any witness, regardless of whether the witness's testimony is later controverted, and that the court on appeal does not sit as a thirteenth juror in factual sufficiency cases. *Id.* at 429–30. We ascertained our job in undertaking a factual sufficiency review as only to review the record to determine if the evidence is factually sufficient to support the jury's findings. *Id.* at 430. And while we did not say so in *Lance*, a comment is warranted that, while the appellate court is blind to the expressions and mannerisms of the witnesses, the trier of fact has:

the opportunity to observe the demeanor of the witnesses and to weigh their testimony; to weigh and decide whether the recollections of long ago were accurate and whether they contained the ring of truth and credibility. The [trier of fact has] the opportunity to carefully observe all of the

---

1. We recognize that Justice Vance also dissented in *Lance v. USAA Ins. Co.*, 934 S.W.2d 427, 431– 33 (Tex.App.—Waco 1996, no writ).

facial expressions, demeanor, tenor, mental awareness and power of recollection[.]

*Gunter v. Molk,* 663 S.W.2d 674, 676 (Tex. App.—Beaumont 1983, writ ref'd n.r.e.); *see Gunn Buick, Inc. v. Rosano,* 907 S.W.2d 628, 631 (Tex.App.—San Antonio 1995, no writ). A reviewing court fails to appreciate the many and varied means a jury resolves conflicts in the testimony when it ignores the physical exhibitions of truth and falsity that the jurors identify in the witnesses but are left unrecorded in the "cold record." *Rosano,* 907 S.W.2d at 631.

It is the majority's position that if a proper application of the principles described in *Lance, Gunter,* and *Rosano* are applied, the conclusion must be reached that the jury's finding in the case before us that a Jacobs–Cathey employee left the belt over which Cockrum tripped is legally and factually supported by the evidence.

### b. Proximate Cause

▉ In its fourth and fifth points of error, Jacobs–Cathey contends that the trial court erred in overruling its motions for instructed verdict and judgment notwithstanding the verdict insofar as these motions relate to the question of causation. Essentially, Jacobs–Cathey maintains that there is no evidence to support the jury's implied finding that the negligent acts of one of its employees in leaving an air conditioning belt on the Ninth Grade Center's roof proximately caused Cockrum's injuries.

The record is clear that the actual belt at issue in this case was never found. From this fact, Jacobs–Cathey argues that it is thereby impossible to determine whether the belt was left by a Jacobs–Cathey employee. We disagree. We held, above, that the evidence is legally and factually sufficient to support the finding that Jacobs–Cathey breached its duty to remove the belts it replaced from the air conditioning units on the Ninth Grade Center's roof in April 1992. In this discussion, we noted evidence in the record that the jury may have believed from Zipperlen's testimony that there were no air conditioning belts on the roof in April 1992 when he and Howard serviced the air conditioning units on the roof at that time. From this finding, the jury may have concluded that the only source of any belts on the roof at the time of Cockrum's accident, then, was Jacobs–Cathey.

▉ Jacobs–Cathey argues further in its fourth point that the evidence is legally and factually insufficient to support the jury's finding that Jacobs–Cathey's negligence proximately caused Cockrum to fall from the Ninth Grade Center's roof. Jacobs–Cathey correctly points out that proximate cause consists of two factors—cause in fact and foreseeability. *Travis v. City of Mesquite,* 830 S.W.2d 94, 98 (Tex.1992); *Peerenboom v. HSP Foods, Inc.,* 910 S.W.2d 156, 164 (Tex.App.—Waco 1995, no writ). Jacobs–Cathey does not contend that Cockrum's injuries were not foreseeable; instead, it maintains only that the circumstances of his injury were too attenuated from its acts of negligence to constitute the cause in fact of his injuries. The test for cause in fact is whether the defendant's act or omission was a substantial factor in bringing about the injury which would not otherwise have occurred. *Prudential Ins. Co. of Am. v. Jefferson Assocs., Ltd.,* 896 S.W.2d 156, 161 (Tex. 1995); *Peerenboom,* 910 S.W.2d at 164–65. In particular, Jacobs–Cathey maintains that the evidence is legally and factually insufficient to support the jury's implied findings on causation because the circumstantial evidence is too "meager" to present a causal connection between Jacobs–Cathey's acts of negligence and Cockrum's injuries.

We have already concluded that the evidence is legally and factually sufficient to support the jury's findings that a Jacobs–Cathey employee left an air conditioning belt on the Ninth Grade Center's roof and that it was over this belt that Cockrum tripped, which caused him to then fall from the roof. There is a direct connection between the belt's having been left on the roof and Cockrum's tripping over it. There were no intervening causes or a string of causes-and-effects that ultimately led to Cockrum's tripping over the belt. Because this relationship between Jacobs–Cathey's negligence and Cockrum's tripping over the belt was direct, we conclude that the evidence is legally and factually sufficient to support the

jury's implied finding that Jacobs–Cathey's negligence was a cause in fact, foreseeable, and therefore a proximate cause, of Cockrum's injuries.

Jacobs–Cathey's points of error are overruled, and the judgment is affirmed.

VANCE, J., concurring and dissenting.

VANCE, Justice, concurring and dissenting.

I concur with the majority's conclusion that Jacobs–Cathey had no duty to remove trash from its work site that had been left by another party. I dissent because I conclude that the evidence is legally and factually insufficient to support the jury's implied finding that Jacobs–Cathey left the airconditioning belt which caused Cockrum to fall.

My analysis turns on how well the record supports the proposition that there were no air-conditioner belts lying on the school's roof when Jacobs–Cathey's employees went there to work in April 1992. If the evidence shows that belts were present at that time, there being no evidence describing the belt that caused Cockrum to fall,[1] we must accept Jacobs–Cathey's assertion that it is just as likely that a Waco ISD employee or someone else left the offending belt as that a JacobsCathey employee left it. In that event, the decision would be controlled by the rule of *Continental Coffee Prods. Co. v. Cazarez*, 937 S.W.2d 444, 450 (Tex.1996) (citing *Litton Indus. Prods., Inc. v. Gammage*, 668 S.W.2d 319, 324 (Tex.1984)) (Where circumstantial evidence is relied upon, and the circumstances are equally consistent with either of two facts, no more than a scintilla of evidence supports a finding and a "no evidence" point must be sustained.).

If, on the other hand, the evidence sufficiently establishes that there were no belts on the roof at that time, then the judgment should stand because the undisputed evidence is that no one else replaced any airconditioner belts between April of 1992 and the date Cockrum fell. In that event, the circumstances support the jury's implied finding that Jacobs–Cathey left the offending belt on the roof. The essential inquiry, then,

is whether the evidence is legally and factually sufficient to support a finding that no belts were present on the roof in April of 1992.

Direct evidence of what was on the roof in April 1992 can only be found in the testimony of Michael Zipperlen, the only witness who was present at that time. Zipperlen's testimony is equivocal. He testified that he and Shawn Howard worked on the air conditioners at the school for "about a week." He said that when they arrived there was "quite a bit of debris on the roof." He recalled seeing a hubcap, some tennis balls, and "quite a few [air conditioner] parts" around two units, one of which had been disassembled. He said, "I don't remember seeing any belts when I went up there." Later, he testified in response to questions from Jacobs–Cathey's counsel:

Q. Okay. And I want to make sure we're clear on this. There may have been some [belts] up there, and you just don't remember?

A. That's true.

Q. There may not have been some up there, and you don't remember?

A. That's true, also.

Zipperlen then testified that Jacobs–Cathey's policy was to clean up the trash it generated during its work and, although he did not specifically recall whether he and Howard left a belt or not, the probability that they did so was "very low." Zipperlen was cross-examined about who worked with him on the job, how long it took, the exact nature of the work done, and whether he recalled picking up all the used belts. He was not cross-examined about what items were on the roof when they arrived to work.

In my view, Zipperlen's testimony does not provide probative evidence that there were no belts on the roof before Jacobs–Cathey worked there in April 1992. *Browning–Ferris, Inc. v. Reyna*, 865 S.W.2d 925, 928 (Tex. 1993). Thus, the jury could only speculate about who left the belt that caused Cockrum to fall. Presented with only circumstantial-evidence, which could lead to the conclusion either that Jacobs–Cathey's employees left

---

1. Accepting as probative the hearsay evidence of      a belt wrapped around his feet after he fell.

the belt or that employees of Waco ISD left the belt, we are instructed that the evidence is no more than a scintilla and that the no-evidence point should be sustained. *Cazarez,* 937 S.W.2d at 450.

Even if one were to accept the view that Zipperlen's testimony is some probative evidence that no belts were present when he and Howard arrived to work in April 1992, the evidence is factually insufficient to establish that proposition.

Evidence other than Zipperlen's testimony bears on the factual-sufficiency question.[2] First, Rusty Wooley testified that belts were present on the roof before and after Cockrum fell and after Jacobs–Cathey worked there. He also testified that he did not check the roof before Jacobs–Cathey's 1992 work. Finally, he said that Jacobs–Cathey was known for failing to remove the debris it generated from its work sites.

Second, Andrew Van Dulock testified that Waco ISD employees had replaced belts on the school's roof as late as September 3, 1991, and that they may have left the belt that caused Cockrum's fall. He said that Jacobs–Cathey was "not careless" about cleaning up its work-sites.

Third, photographs taken after the fall show several belts lying on the roof.

Essentially, the testimony from Wooley and Van Dulock conflicts about Jacobs–Cathey's work habits. Wooley's testimony about work habits conflicts with Zipperlen's. Van Dulock testified that Waco ISD employees may have left belts on the roof. None of the recited evidence adds weight to the proposition that Jacobs–Cathey left the belt that caused Cockrum to fall. Asking whether it is "more probable than not" that Jacobs–Cathey left any belts on the school's roof or left the actual belt that caused Cockrum to fall, I believe that the evidence is so weak and insufficient as to demonstrate that the finding that Jacobs–Cathey was negligent is clearly wrong and manifestly unjust. *El*

*Chico Corp. v. Poole,* 732 S.W.2d 306, 313 (Tex.1987) (plaintiff must prove that it is more probable than not that but for the defendant's conduct the accident would not have occurred); *Cain v. Bain,* 709 S.W.2d 175, 176 (Tex.1986); William Powers, Jr. & Jack Ratliff, *Another Look at "No Evidence" and "Insufficient Evidence,"* 69 TEX. L.REV. 515, 519 n. 11 (1991).

I would reverse the judgment and render judgment that Cockrum take nothing. Alternatively, I would remand the cause for another trial.

VANCE, Justice, dissenting on Motion for Rehearing.

Jacobs–Cathey's motion for rehearing asserts in eleven points that this court erred in affirming the judgment of the trial court. I believe the motion for rehearing should be granted and the judgment reversed in its favor. Because the majority does not, I dissent to the order overruling the motion.

At the bottom line, my quarrel with the majority on the legal-sufficiency question is about what inferences may be drawn from the circumstantial evidence. On the factual-sufficiency question, we disagree primarily about how much deference we are required to give to the determinations made by the fact-finder. As I stated in my original dissent, I believe that Cockrum's right to recover rests on whether the evidence is legally sufficient to show that no air conditioning belts were present on the school's roof when Jacobs–Cathey's employees began working there in April 1992.

The majority opinion constructs a ladder to reach the conclusion that the evidence is sufficient, while admitting that the evidence of who left the offending belt is circumstantial. That ladder consists of three rungs, each of which is unsupported by the record. The first rung asserts that "the jury may have considered [Zipperlen's] memory skills sufficiently sound that he would have recalled

**2.** The historical rule is that the Supreme Court will presume that a court of appeals would have found the evidence to be factually insufficient when it finds the evidence to be legally insufficient. *Great Am. Ins. Co. v. Langdeau,* 379 S.W.2d 62, 74 (Tex.1964). We do not know,

however, if the requirement of *Pool v. Ford Motor Co.,* 715 S.W.2d 629 (Tex.1986), that we detail the evidence when reversing for factual insufficiency changes that presumption. *See Flores v. Flores,* 847 S.W.2d 648, 653 (Tex.App.—Waco 1993, writ denied).

seeing air conditioner belts on the roof if, indeed, there had been any." As I pointed out in my original dissent, Zipperlen testified directly that he did not recall whether any belts were present or not. Why, then, is it more likely that Zipperlen would have re-called seeing belts than not seeing belts? The majority's assertion is unsupported by the record and is simply speculation about what the jury may have inferred.

The second rung asserts: "The jury could have determined that the type of debris indi-cated in the photographs is the type of debris that was located on the roof in April 1992 after Zipperlen and Howard serviced the air conditioning units. Thus, the jury could have concluded that Zipperlen would have noticed the air conditioning belts on the roof at the time had there actually been any and that, as a necessary consequence, any belts after April 1992 were left by either Zipperlen or Howard." The photographs admittedly show belts on the roof after Cockrum fell. There-fore, if the jury concluded, as the majority asserts, that the debris was of the same type as when Zipperlen arrived in April 1992, it would be more reasonable to conclude that belts were already present than to conclude, in the face of Zipperlen's testimony that he did not recall, that Zipperlen would have recalled belts had they been there. Again, the inference ascribed to the jury is unsup-ported by the record.

The third rung asserts "the record reveals that Wooley was Waco ISD's roofing supervi-sor and therefore *probably* visited the roofs of Waco ISD building more frequently than Dulock," who was the "maintenance supervi-sor in charge of heating and air conditioning for Waco ISD." (Emphasis added.) Noth-ing in the record supports that supposition. In fact, it is just as reasonable to assume that Dulock visited roofs of Waco ISD buildings more frequently than Wooley because air conditioners typically need repairs more of-ten than roofs. Here, the majority's infer-ence that the jury would have given more weight to Wooley's testimony is unsupported by the record.

Thus, it becomes apparent that the majori-ty's determination, *i.e.*, the jury could have concluded that "the belt over which Cockrum tripped was left by a Jacobs-Cathey employ-ee," can only be reached by relying on as-sumptions about what the jury *could have inferred* that have no support in the record. Because the circumstantial evidence is equal-ly consistent with either of two assumptions, *i.e.*, that Jacobs-Cathey's employees left the belt or that another work-party left the belt, the no-evidence point should be sustained. *Continental Coffee Prods. Co. v. Cazarez*, 937 S.W.2d 444, 450 (Tex.1996).

I find interesting the majority's reliance on *Lance v. USAA Ins. Co.*, 934 S.W.2d 427, 428 (Tex.App.-Waco 1996, no writ). *Lance* was a "zero-damages" case where the majority ap-proved the jury's finding of no damages. There, the majority decided that deference to a jury's findings allowed the jury to disre-gard uncontroverted evidence; whereas here, the majority defers to the jury's affirmative finding of facts that have no support in the evidence. In my view, we cannot defer to the jury when there is no evidence of the fact that the jury found or when the evidence conclusively establishes the fact that the jury failed to find. In other words, in analyzing no-evidence points and conclusive-evidence points, deference is not part of the equation.

I would grant the motion for rehearing, sustain the no-evidence point, reverse the judgment, and render the judgment in favor of Jacobs-Cathey.

Looking at factual sufficiency, the majority states: "We ascertained our job in undertak-ing a factual sufficiency review as only to review the record to determine if the evi-dence is factually sufficient to support the jury's finding." *Jacobs–Cathey v. Cockrum*, at 295 (Tex.App.-Waco 1997). That states the general proposition, but says little about the question of how we accomplish that task. The majority's view is that we do not "pass on the weight" if the evidence. *Id.*

An unbroken line of decisions by the Texas Supreme Court requires the courts of ap-peals to "consider and weigh" all the evi-dence when conducting a factual-sufficiency review. *Ortiz v. Jones*, 917 S.W.2d 770, 772 (Tex. 1996); *Roberson v. Robinson*, 768 S.W.2d 280, 281 (Tex. 1989); *Pool v. Ford*

*Motor Co.*, 715 S.W.2d 629, 635 (Tex. 1986); *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986); *Burnett v. Motyka*, 610 S.W.2d 735, 736 (Tex. 1980); *In re King's Estate*, 150 Tex. 662, 244 S.W.2d 660, 661 (1952). With that in mind, I looked for recent opinions (other than mandamus questions where we defer to the trial judge's findings of fact because of the abuse-of-discretion standard) which mention deference to fact finding. I found relatively few.[1] *IKB Indus. (Nigeria) Ltd. v. Pro–Line Corp.*, 938 S.W.2d 440, 442 (Tex. 1997)(findings of fact, even though "useful," not required because appellate courts not obligated to give them the same level of deference as to facts found by factfinder); *Transportation Ins. Co. v. Moriel*, 879 S.W.2d 10, 30–31 (Tex. 1994)(level of appellate deference to awards of punitive damages not altered, but courts should "carefully scrutinize" them to see if supported by the evidence)(meaningful trial court review of awards of punitive damages especially important because of the deference which courts of appeal must give to jury verdicts); *Cropper v. Caterpillar Tractor Co.*, 754 S.W.2d 646, 649 (Tex. 1988)(reversals of jury verdicts far less than the number of cases in which power to reverse is mentioned, partly due to court's deference to jury verdicts in general). Thus, I question just how much "deference" is required when our constitutional duty to review the factual sufficiency of evidence to support a jury finding is invoked. Assuming that we should give some deference to the factfinder, how do we balance deference to a judge's or jury's findings with our duty to "consider and weigh" the evidence—a question of long standing still unanswered by the Supreme Court.

As recently as 1986, the Court noted in *Pool*:

Chief Justice Calvert opined that a court of appeals "should analyze the evidence on both sides of the issue, at least in a brief and general way, and point out why the finding is regarded as being contrary to the great weight and preponderance of the evidence." Calvert, *supra*, at 368. Justice Garwood enumerated a few of the many

instances when a verdict should be set aside and a new trial granted. He cited examples of "such as to shock the conscience," "so as to be clearly unjust," "to clearly indicate bias." He suggested that in arriving at an insufficiency holding, the court of appeals "must, up to a point, follow the same kind of mental process that a jury does." Garwood, *supra*, at 811. Recognizing the inexact standard set for the courts of appeals, Justice Garwood allowed that "[m]aybe some day we will develop more rules to aid trial courts and courts of civil appeals in dealing with this troublesome question." *Id.* at 812.

*Pool*, 715 S.W.2d at 635.

My view is that adherence to an elusive obligation to defer to the factfinder, as was espoused in *Lance* and repeated in the majority's opinion in this case, without "considering and weighing" the evidence, results in no factual-sufficiency review. Perhaps the guidance that Justice Garwood hoped for on this "troublesome question" wiill be forthcoming.

Finally, I note that the legal- and factual-sufficiency questions were blurred in the majority's opinion on original submission when it combined its discussion of whether the evidence legally and factually supports the jury's finding of breach of duty by Jacobs-Cathey. *Jacobs–Cathey*, at 293–296. The opinion makes no distinction between the two standards of review, simply concluding that the verdict is "legally and factually supported by the evidence." *Id.* at 296.

Because it drew unreasonable inferences not supported by the record, placed too much reliance on a perceived duty of this court to defer the jury, and did not address the question of factual sufficiency apart from the question of legal sufficiency, I conclude that the original majority opinion failed to properly apply the factual-sufficiency standard to the facts of this case. Even assuming that the evidence is legally sufficient to support the verdict, a review by properly considering

1. The majority cites *Ortiz v. Jones*, 917 S.W.2d 770, 772 (Tex. 1996), as supporting its assertion in *Lance* that we must "[give] due deference to the jury's determinations of the facts[.]" *Jacobs–Cathey*, at 296. I find no reference in *Ortiz* to a duty to defer to the factfinder.

and weighing all of the evidence would result in a finding that the evidence is factually insufficient to support the verdict. Thus, I would in the alternative grant the motion for rehearing, reverse the judgment, and remand the cause for another trial.