TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-01-00406-CV






Julia Rocha and George Rocha Sr., individually and as representatives for the


Estate of George Rocha Jr., Appellants



v.



Michael Faltys, Pi Kappa Alpha-Alpha Omicron Chapter, and Pi Kappa


Alpha International Fraternity, Appellees







FROM THE DISTRICT COURT OF WILLIAMSON COUNTY, 277TH JUDICIAL DISTRICT
NO. 00-192-C277, HONORABLE DONALD HUMBLE, JUDGE PRESIDING






 Appellants Julia Rocha and George Rocha Sr., individually and as representatives for
the Estate of George Rocha Jr. (the Rochas), appeal the trial court's order granting summary
judgment in favor of appellees Michael Faltys, Pi Kappa Alpha-Alpha Omicron Chapter (the
fraternity), and Pi Kappa Alpha International Fraternity (Pi Kappa Alpha International) (collectively
appellees). The Rochas also appeal the trial court's denial of their motion for continuance and the
trial court's rulings on their objections to affidavits filed by Faltys, the fraternity, and Pi Kappa
Alpha International. We will affirm the judgment. (1)




FACTUAL AND PROCEDURAL BACKGROUND

 This case arises out of a tragic accident that occurred on April 26, 1998. At the time
of the accident, George Rocha Jr. was a twenty-one-year-old junior at Southwestern University in
Georgetown and a member of Pi Kappa Alpha fraternity. On April 25, 1998, George and his friend
Faltys (a former suitemate who was also a member of the fraternity) attended a crawfish boil at the
fraternity house. George consumed some beer at the crawfish boil, which officially ended at 6:00
p.m.; an informal open house followed for some period of time. Around 2:45 a.m. on April 26,
George and Faltys, accompanied by three co-eds from Southwestern, went to a local swimming spot
on the San Gabriel River called the "Blue Hole." At the Blue Hole, Faltys and George climbed to
the top of some cliffs that overlook the river. Faltys dove into the river from the cliffs and then,
according to appellants, encouraged George to do the same. George, who was unable to swim, also
jumped from the cliffs but began floundering as soon as he hit the water. Despite the efforts of
Faltys and other students to save George, he drowned.

 On April 26, 2000, the Rochas filed suit for wrongful death arising out of the alleged
negligence of Faltys and both the Southwestern chapter and international association of Pi Kappa
Alpha. On December 6, 2000, Faltys filed a no-evidence motion for summary judgment. On
December 28, the fraternity and Pi Kappa Alpha International filed no-evidence motions for
summary judgment. Rocha responded to appellees' motions and also filed a motion for continuance
to engage in additional discovery. The trial court granted all of the summary judgment motions on
April 29, 2001 and denied the Rochas' motion for continuance on April 30. The Rochas raise four
issues on appeal.


MOTION FOR CONTINUANCE


Standard of Review

 We review the grant or denial of a motion for continuance for an abuse of discretion. 
Villegas v. Carter, 711 S.W.2d 624, 626 (Tex. 1986); Texas Dep't of Human Servs. v. Green, 855
S.W.2d 136, 147 (Tex. App.--Austin 1993, writ denied). This Court cannot overrule the trial
court's decision unless the trial court acted unreasonably or in an arbitrary manner, "without
reference to any guiding rules and principles." Beaumont Bank, N.A. v. Buller, 806 S.W.2d 223, 226
(Tex. 1991) (quoting Downer v. Aquamarine Operators, Inc., 701 S.W.2d 238, 241-42 (Tex. 1985)). 

 The trial court may grant a continuance to a party opposing a motion for summary
judgment to permit further discovery if the non-movant can show the need for such discovery to
oppose the motion. Tex. R. Civ. P. 166a(g). A motion for continuance seeking time for discovery
must be supported by an affidavit that describes the evidence sought, explains its materiality, and
shows that the party requesting the continuance has used due diligence to obtain the evidence. Tex.
R. Civ. P. 251; Tex. R. Civ. P. 252; see Hatteberg v. Hatteberg, 933 S.W.2d 522, 527 (Tex.
App.--Houston [1st Dist.] 1994, no writ); Green, 855 S.W.2d at 147. The affidavit of diligence
must state with particularity what diligence was used; conclusory allegations of diligence are not
sufficient. Gregg v. Cecil, 844 S.W.2d 851, 853 (Tex. App.--Beaumont 1992, no writ). A party
who fails to diligently use the rules of discovery is not entitled to a continuance. State v. Wood Oil
Distrib., Inc., 751 S.W.2d 863, 865 (Tex. 1988).

 The trial court did not abuse its discretion in denying the Rochas' motion for
continuance. The Rochas moved for a continuance on the ground that an affidavit from Daniel
Wallace provided "new" evidence that other people, including other fraternity members, were
present at the time of the events, contrary to Faltys's contention that only he, George and the three
women were at the Blue Hole when the accident occurred. (2) The motion stated that the continuance
was sought "to explore this evidence and depose other witnesses." The motion failed to identify the
specific evidence that would have been sought had the continuance been granted. Nor does the
motion establish or discuss the materiality of the new evidence to the Rochas' claims. This lack of
specificity does not comply with the requirements of Rule 252.

 Furthermore, the Rochas failed to establish that they used due diligence in pursuing
the evidence they sought. Wallace's identity was not unknown to the Rochas' attorney. He was
identified in the police report regarding the accident on April 26, 1998. The Rochas' attorney stated
that the failure to obtain his testimony earlier in the case was due to difficulty in locating Wallace,
who was a college student with a transient lifestyle. The attorney provided an affidavit as evidence
of diligence; this affidavit, however, contained only conclusory statements that the Rochas' attorneys
had been diligent and that efforts had been made to find Daniel Wallace earlier in the discovery
process. The affidavit did not describe the particular efforts that were made. These statements are
wholly insufficient to establish due diligence. See Gregg, 844 S.W.2d at 853. Moreover, the
Rochas' attorney admits that she failed to take extensive discovery because most witnesses seemed
to agree as to the basic facts of the case. In sum, the Rochas failed to establish due diligence
sufficient to require a continuance. Thus, we hold that the Rochas have not demonstrated that the
trial court abused its discretion in denying their motion for a continuance. We overrule their first
issue.

SUMMARY JUDGMENT


Standard of Review

 A no-evidence summary judgment is essentially a pre-trial directed verdict; thus, we
apply the same legal sufficiency standard in reviewing the no-evidence summary judgment as we
apply in reviewing a directed verdict. Jackson v. Fiesta Mart, Inc., 979 S.W.2d 68, 70 (Tex.
App.--Austin 1998, no pet.). The appellate court, then, must determine whether the plaintiff
produced any evidence of probative force to raise fact issues on the material questions presented. 
Id. The appellate court must consider all of the evidence in the light most favorable to the party
against whom the no-evidence summary judgment was rendered, and every reasonable inference
must be indulged in favor of the nonmovant and any doubts resolved in its favor. Id.

 In their motions for summary judgment, the appellees each asserted that there was no
evidence of duty, proximate cause, or negligence, and thus, the Rochas' claims failed as a matter of
law. As we agree that none of the defendants owed a duty to George, we do not reach the issues of
proximate cause or breach. We will first discuss the claims against Faltys and then those against the
local and international fraternities.


Faltys 

 Negligence is a common-law doctrine, consisting of three essential elements: (1) a
legal duty owed by one person to another, (2) a breach of that duty, and (3) damages proximately
resulting from the breach. El Chico Corp. v. Poole, 732 S.W.2d 306, 311 (Tex. 1987), superseded
by statute, Tex. Alco. Bev. Code Ann. §§ 2.01-2.03 (West 1995). To establish liability, a plaintiff
must prove the existence and violation of a duty owed to him by the defendant. Id. It is fundamental
that the existence of a legally cognizable duty is a prerequisite to all tort liability. Graff v. Beard,
858 S.W.2d 918, 919 (Tex. 1993). The existence of duty is a question of law for the court to decide
from the facts surrounding the occurrence in question. Greater Houston Transp. Co. v. Phillips, 801
S.W.2d 523, 525 (Tex. 1990). Generally, a person is under no legal duty to control the conduct of
another, even if the person has the ability to do so, unless there exists a special relationship between
them. Triplex Communications, Inc. v. Riley, 900 S.W.2d 716, 720 (Tex. 1995); Otis Eng'g Corp.
v. Clark, 668 S.W.2d 307, 309 (Tex. 1983).

 The Rochas allege that Faltys owed a legal duty to George under two theories: (1) that
all persons owe a duty to act reasonably towards others, and (2) that Faltys, by taking George to the
Blue Hole and encouraging him to jump, created the situation that led to George's death and thus
had a duty to prevent it. Under their first theory, the Rochas cite several cases that they assert stand
for the proposition that "the law imposes on all persons a duty to act as a reasonably prudent person
would act under same or similar circumstances, considering any reasonably foreseeable risks or
probability of injury to others." See, e.g., Zidell v. Bird, 692 S.W.2d 550, 553 (Tex. App.--Austin
1985, no writ). In each case cited by the appellants, however, the court found a duty on the part of
the defendant; the remaining issue to be decided was the question of breach. See Great Atl. & Pac.
Tea Co. v. Evans, 175 S.W.2d 249, 250 (Tex. 1943) (involving duty employer owes to employee);
Zidell, 692 S.W.2d at 553 (involving common-law duty imposed on a party contracting to supply
services to perform those services with reasonable care); Vargas v. City of San Antonio, 650 S.W.2d
177, 178-79 (Tex. App.--San Antonio 1983, writ dism'd w.o.j.) (involving duty created by city
employee's violation of ordinance requiring quarantine of dogs after an attack).

 The test framed by the Rochas--how a reasonably prudent person would act under
the same or similar circumstances, considering any reasonably foreseeable risks or probability of
injury to others--is the test for determining when a duty has been breached, not the test for whether
a duty exists. That test, therefore, is applicable only if Faltys owed a legal duty to George; the
Rochas have not pleaded facts that would establish any specific duty on the part of Faltys. Thus,
Faltys did not owe a general legal duty to George to act reasonably. 

 The Rochas next argue that Faltys, by taking George to the top of the cliff and
encouraging him to jump off the cliff while he was intoxicated, created a dangerous situation, thus
giving rise to a duty to prevent George's death. It is a basic principle of legal responsibility that
"individuals should be responsible for their own actions and should not be liable for others'
independent misconduct." Read v. Scott Fetzer Co., 990 S.W.2d 732, 739 (Tex. 1998) (Hecht, J.,
dissenting). However, if a "party negligently creates a situation, then it becomes his duty to do
something about it to prevent injury to others if it reasonably appears or should appear to him that
others in the exercise of their lawful rights may be injured thereby." El Chico Corp., 732 S.W.2d 
at 311 (quoting Buchanan v. Rose, 159 S.W.2d 109, 110 (1942)).

 Faltys's act of taking George to the top of the cliffs, in and of itself, does not give rise
to a legal duty. Simply taking George, an adult man, to the location where George could choose to
engage in an allegedly dangerous activity does not constitute negligent creation of a dangerous
situation. The fact that George was intoxicated does not affect this analysis. It has been long-recognized at common law that an individual who chooses to consume alcohol maintains the
ultimate power over his situation and thus the obligation to control his own behavior. Graff, 858
S.W.2d at 921-22. To impose a legal duty on Faltys because George had consumed alcohol would
be contrary to this principle. 

 The Rochas also allege, however, that Faltys negligently created a dangerous situation
by encouraging George to jump from the cliff when he knew George could not swim. None of the
parties have identified any Texas case suggesting that an adult encouraging another adult to engage
in a dangerous activity can give rise to a legal duty. (3) We are unable to locate any such precedent. 
Nevertheless, we must look at the particular facts of a case to determine whether a duty exists. See
Phillips, 801 S.W.2d at 525. In determining whether to impose a duty, the court must balance
several interrelated factors. Golden Spread Council, Inc. v. Akins, 926 S.W.2d 287, 289 (Tex. 1996). 
The court "must weigh the risk, foreseeability, and likelihood of injury against the social utility of
the actor's conduct, the magnitude of the burden of guarding against the injury, and the consequences
of placing the burden on the defendant." Id. at 289-90. The court also looks to whether one party
had superior knowledge of the risk or a right to control the actor who caused the harm. Id. at 290. 
In holding that Faltys's actions did not create a duty, we do not decide whether encouragement could
ever give rise to a duty but only that on these facts a duty did not arise.

 The "encouragement" alleged to create a duty in the instant case was implicit
encouragement at most. It consisted of Faltys's suggestion to George that they jump off the cliff at
the Blue Hole and Faltys's showing George a purportedly safe location on the cliffs from which to
jump into the water. However, there is no evidence that Faltys actively encouraged, urged,
pressured, forced, or coerced George into jumping from the cliff. Rather, Faltys told George that he
did not have to jump if he did not want to; George decided to jump from the cliff. Under these facts
we decline to impose a legal duty on Faltys for negligently creating a dangerous situation. 

 The cases cited by the Rochas do not support the imposition of a duty in the instant
case. Each case involves defendants who had undertaken much more significant affirmative acts
than the ones Faltys is alleged to have undertaken here. In Venetoulias v. O'Brien, the court held that
a duty arose when the defendant affirmatively promised the plaintiff, prior to her consumption of
alcohol, that he would arrange safe transportation to get her home from the bar where they were
drinking. 909 S.W.2d 236, 241-42 (Tex. App.--Houston [14th Dist.] 1995, writ dism'd by agr.). 
The plaintiff relied on this promise and became intoxicated. Instead of driving her home as
promised, the defendant put her in her car, placed her keys in the ignition, and left. Id. at 240. The
court imposed a duty based on the defendant's promise and these affirmative acts. An additional fact
that likely affected the analysis was that the defendant was the owner of the bar where the plaintiff
had been drinking. See id. at 240.

 In Golden Spread Council, the court held that the defendant, a regional boy scout
council, had a duty to the young members of a church boy scout group not to recommend to the
group a particular person as a potential scoutmaster if the council knew or should have known the
person was particularly likely to molest boys. 926 S.W.2d at 292. The court noted that the council
had full knowledge of complaints of the scoutmaster's prior molestation of boys and nonetheless
recommended him. Id. at 290. In deciding whether to impose a duty, the court also took special note
of the strong policy of Texas to protect children from abuse. Id. at 291. The implicit encouragement
by Faltys in the instant case is not of the nature of the behavior that was found to give rise to a duty
in the cited cases. As such, we decline to impose a legal duty on Faltys under these facts. We
overrule the second issue on appeal.


The Fraternity 

 The Rochas assert that the fraternity owed a legal duty to George under two theories:
(1) that the trip to the Blue Hole was a fraternity activity, and as such the fraternity owed a duty to
conduct the activity in a reasonably safe manner, and (2) the fraternity's providing alcohol to George
gave rise to a duty. The Rochas first argue that there is a fact issue as to whether the trip to the Blue
Hole constituted a fraternity activity and thus summary judgment is inappropriate. We disagree. The
crawfish boil ended at 6:00 p.m. on April 25. George, Faltys and the three other students did not
leave for the Blue Hole until 2:45 a.m. on April 26, more than nine hours after the end of the
crawfish boil. The only evidence the Rochas offer in support of this theory is that the people who
were at the Blue Hole had also attended the crawfish boil and open house party, and moreover, that
some of these people were members of the fraternity. (4) There is no evidence that the trip to the Blue
Hole was organized or planned by the fraternity. Simply because a group of individuals who are
members of the same social organization go together on a social outing does not make the outing an
activity of the organization. 

 The Rochas also assert that a duty arises from the fact that the fraternity provided beer
to George. A social host does not incur a legal duty simply by providing alcohol to an individual. 
Reeder v. Daniel, 61 S.W.3d 359, 364 (Tex. 2001) (refusing to recognize a cause of action against
social hosts who make alcohol available to guests under the age of eighteen); Smith v. Merritt, 940
S.W.2d 602, 608 (Tex. 1997) (holding that violation of statute making it illegal to provide alcohol
to a minor does not support a negligence per se cause of action against a social host); Graff, 858
S.W.2d at 921-22 (holding that a social host serving alcohol to adult guests does not give rise to a
duty); Tex. Alco. Bev. Code Ann. § 2.03 (West 1995) (stating that chapter two of the Alcoholic
Beverage Code provides "the exclusive cause of action for providing an alcoholic beverage to a
person 18 years of age or older"). Therefore, the fraternity did not owe a legal duty under the
common law by providing beer to George. (5)

 The Rochas, however, also allege that the fraternity provided beer to George in return
for a fee. Providing an alcoholic beverage for a fee can be the basis of a statutory cause of action if
the person to whom the alcohol is served was obviously intoxicated to the extent that he presented
a clear danger to himself and others, and the intoxication was the proximate cause of the damages
suffered. Tex. Alco. Bev. Code Ann. § 2.02(b) (West 1995). However, this cause of action can only
be brought against a statutorily defined "provider." Id.; see Merritt, 940 S.W.2d at 607. A
"provider" is a person who sells or serves an alcoholic beverage under authority of a license or
permit issued under the Alcoholic Beverage Code or a person "who otherwise sells an alcoholic
beverage to an individual." Tex. Alco. Bev. Code Ann. § 2.01(1) (West 1995). In this case, there
is no evidence that the fraternity had a permit or license under the code. Furthermore, there is no
evidence in the record that the fraternity served beer to George or anyone else at the crawfish boil. 
If there is no evidence that the fraternity served beer to George, there cannot be any evidence that
the fraternity sold beer to George. Thus, we need not address the Rochas' argument that providing
alcohol to a dues-paying member of an unincorporated association constitutes a sale under chapter
two of the Alcoholic Beverage Code. Therefore, we hold that the fraternity did not owe George a
legal duty under the Alcoholic Beverage Code.


Pi Kappa Alpha International

 The Rochas also assert that Pi Kappa Alpha International owed a legal duty to George
because it "negligently created the situation and failed to act reasonably in its actions of providing
alcohol and fostering and encouraging a dissolute attitude at the fraternity which caused George
Rocha Jr. to drink and lead [sic.] to his death." The Rochas do not identify any evidence in the
record that directly or inferentially supports their assertions that Pi Kappa Alpha International
provided alcohol or encouraged a dissolute attitude. Thus, we hold that Pi Kappa Alpha
International owed no legal duty to George. We overrule the Rochas' third issue.


HAZING

 The Rochas assert that because there is evidence that George's death was the result
of hazing, summary judgment should not have been granted in favor of the appellees. Assuming
without deciding that hazing would give rise to a legal duty, the Rochas' claims still fail because
there is no evidence in the record to show that what occurred on the night in question was hazing. 
The Rochas' sole support for their claim of hazing arises from a fraternity definition which states
that "hazing" is "any activity that might reasonably be expected to bring physical harm to the
individual." This definition is found in Pi Kappa Alpha International's standards regarding treatment
of pledges. The Rochas state that because diving from the cliffs at night was dangerous and could
cause injury, the events at the Blue Hole constituted hazing.

 The international fraternity's definition of hazing does not create a legal duty to
George. See Jacobs-Cathey Co. v. Cockrum, 947 S.W.2d 288, 291-92 (Tex. App.--Waco 1997, writ
denied) (holding that company policy to fix certain dangerous conditions caused by others does not
create a legal duty to persons who may be injured by the dangerous condition); Estate of Catlin v.
General Motors Corp., 936 S.W.2d 447, 451 (Tex. App.--Houston [14th Dist.] 1996, no writ)
(holding that a corporation's internal policy regarding alcohol consumption does not create a legal
duty to third parties). Moreover, there are policy reasons that weigh against imposing an open-ended
duty such as that contained in Pi Kappa Alpha International's standards to refrain from "any activity
. . . that might bring physical harm to [an] individual." Such a duty could reasonably extend to much
legal, albeit dangerous activity. Moreover, there is no evidence that the activities in question
constituted hazing as that term is ordinarily used; George was a member of the fraternity, not a
pledge. Thus, we hold that there is no evidence to support a legal duty to George based on hazing
and overrule the Rochas' fourth issue.


OBJECTIONS TO AFFIDAVITS

 Finally, the Rochas appeal the trial court's rulings on objections they made regarding
portions of certain affidavits filed by appellees in support of their motions for summary judgment. 
Based on our review of the record, the admission of these statements did not cause the rendition of
an improper judgment. Therefore, we do not address the issue of the statements' admissibility. See
Tex. R. App. P. 44.1(a)(1).

CONCLUSION


 The trial court did not abuse its discretion in denying the Rochas' motion for
continuance or in overruling their objections to the appellees' summary judgment evidence. When
a young man dies at such a young age, one cannot avoid a feeling of sadness. But while the events
leading to George's death were tragic and unfortunate, on these facts his friend Faltys did not have
a legal duty such that a cause of action for negligence can be maintained, nor did the fraternity or Pi
Kappa Alpha International. Therefore, we affirm the trial court's summary judgment. 



 

 Bea Ann Smith, Justice

Before Justices Kidd, B. A. Smith and Powers*

Affirmed

Filed: February 7, 2002

Publish








* Before John E. Powers, Senior Justice (retired), Third Court of Appeals, sitting by assignment.
See Tex. Gov't Code Ann. § 74.003(b) (West 1998).
1.   The appellees moved for both no-evidence and traditional summary judgments. See Tex.
R. Civ. P. 166a(i); Tex. R. Civ. P. 166a. The trial court's judgment did not specify its basis for
granting summary judgment. The Rochas on appeal attack the summary judgment on both no-evidence and traditional grounds. As we affirm the grant of the no-evidence summary judgment, we
need not reach the traditional summary judgment.
2.   The trial court admitted the Wallace affidavit into evidence.
3.   Faltys has admitted that jumping from the cliff into the water below was a dangerous
activity.
4.   There is some dispute as to how many people at the Blue Hole had been at the crawfish boil
earlier. We believe that this dispute, however, is not material or relevant.
5.   As noted below, there is no evidence in the record to suggest that the Fraternity served beer
to George or anyone else at the party. Whether beer was served, however, would not change the
analysis as to the existence of a common law duty.