David L. LANCE and Shelley
W. Lance, Appellants,

v.

USAA INSURANCE COMPANY,
Appellee.

No. 10–95–202–CV.

Court of Appeals of Texas,
Waco.

Nov. 20, 1996.

Rehearing Overruled Dec. 18, 1996.

Aaron L. Jackson, Jackson & Hemer, L.L.P., Austin, for appellants.

Robert G. Hogue, Touchstone, Bernays, Johnston, Beall & Smith, Dallas, for appellee.

Before DAVIS, C.J., and CUMMINGS and VANCE, JJ.

## OPINION

CUMMINGS, Justice.

Appellants David and Shelley Lance sued appellee, USAA Insurance Company, pursuant to an uninsured motorist insurance policy to recover for injuries resulting from an automobile accident that David had with Brandi McDonald. The record reveals that on March 15, 1991, McDonald, an uninsured motorist, was driving her pick-up truck northbound on Interstate 35E near Waxahachie when Trooper Ronnie W. Applewhite, Sr.,

attempted to pull her over. McDonald, while driving in the inside of the interstate's two northbound lanes, began to slow until she completely stopped her vehicle while it was still almost fully situated in the inside lane. Perceiving the dangerousness of the situation, Trooper Applewhite, who had previously activated his emergency lights, parked his patrol car on the shoulder of the outside lane and was about to exit his vehicle so that he could compel McDonald to move her vehicle onto the shoulder when he witnessed the collision between David and McDonald. David and the two or three vehicles that had been travelling in front of him in the outside lane moved to the inside lane when Trooper Applewhite drove onto the outside shoulder. The vehicles in front of David swerved back into the outside lane once they saw McDonald's pick-up truck stopped in the inside lane. David, however, was not able to swerve back fast enough to avoid the collision.

The jury found David and McDonald each to be 50% negligent in causing the accident, but it also found that David had suffered no damages on any of his claims. The Lances bring a single point of error on appeal—that the jury's findings of zero damages on their claims for (1) David's past physical pain and mental anguish [1] and (2) Shelley's loss of consortium were against the great weight and preponderance of the evidence. We affirm.

In reviewing a factual sufficiency point we examine all of the evidence in the record, both for and against the judgment, in determining whether the finding in question is so against the great weight and preponderance of the evidence as to be manifestly wrong and unjust. *Pool v. Ford Motor Co.,* 715 S.W.2d 629, 635 (Tex.1986) (on rehearing); *In re King's Estate,* 150 Tex. 662, 244 S.W.2d 660, 661 (1951); *ASAI v. Vanco Insulation Abatement, Inc.,* 932 S.W.2d 118, 121 (Tex.App.—El Paso 1996, no writ). In undertaking the review, the court shall neither interfere with the jury's resolution of con-

---

1. A charge was given on future physical pain and mental anguish, but the Lances in their brief only argue against the jury's failure to award damages for past physical pain and mental anguish.

Therefore, any complaint they may have had on future physical pain and mental anguish has been waived. *See* Tex.R.App. P. 74(f).

flicts in the evidence nor pass on the weight and credibility of the witnesses' testimony. *ASAI*, 932 S.W.2d at 121; *see Mohnke v. Greenwood*, 915 S.W.2d 585, 589 (Tex.App.—Houston [14th Dist.] 1996, no writ); *Parallax Corp., N.V. v. City of El Paso*, 910 S.W.2d 86, 89–90 (Tex.App.—El Paso 1995, writ denied); *Potter v. Anthony Crane Rental of Texas, Inc.*, 896 S.W.2d 845, 849 (Tex.App.—Beaumont 1995, writ denied). The appellate court cannot retry the case or otherwise substitute its judgment or opinion for that of the trier of fact. *Mohnke*, 915 S.W.2d at 589; *see Parallax Corp.*, 910 S.W.2d at 89–90; *Potter*, 896 S.W.2d at 849. Only when the judgment is *clearly* wrong and unjust, after giving due deference to the jury's determinations of the facts, may the reviewing court reverse the judgment. *Ortiz v. Jones*, 917 S.W.2d 770, 772 (Tex.1996); *Potter*, 896 S.W.2d at 849.

In their brief, the Lances contend the following physical injuries were caused directly by David's automobile collision with McDonald: cuts on his left hand, a bruised shoulder, a bruised and swollen face, general restricted movement and sleeplessness. We have reviewed the record thoroughly, and it fails to establish that the jury's finding of no damages was against the great weight and preponderance of the evidence.

We will first address whether the facts in the record support the jury's implied finding of no damages for the injuries to David's hand, shoulder and face.

■ The Lances complain that the evidence was uncontroverted that David suffered cuts to his left hand, a bruised shoulder and a bruised and swollen face as a result of the accident. The only evidence offered by the Lances in support of their contention consisted of their testimony on David's physical condition immediately after the accident.

David testified that as a result of the accident, there was glass embedded in his left hand and that he hit his head against the air bag that had activated upon his car's impact with McDonald's pick-up truck. He testified that the seat in which he was sitting was twisted as a result of the collision. He stated that Trooper Applewhite transported him to the emergency room at a local Waxahachie hospital where medical professionals re-

moved shards of glass from his left hand. According to David, the medical professionals also gave him some ice packs and a sling for his shoulder.

Shelley testified that when she saw David at the hospital she noticed bandages on his hand but that she could see where his hand had been cut. She also noticed that he had been given an ice pack and that his face appeared to be swollen. USAA did not offer any evidence to directly controvert the testimony of David and Shelley on the alleged injuries to his hand, shoulder and face.

■ While David's and Shelley's testimony on these injuries was not controverted, the jury was not required to accept their version of the events. The jury is free to believe or disbelieve any witness, regardless of whether the witness's testimony is later controverted. *Novosad v. Mid–Century Ins. Co.*, 881 S.W.2d 546, 551 (Tex.App.—San Antonio 1994, no writ); *McGuffin v. Terrell*, 732 S.W.2d 425, 428 (Tex.App.—Fort Worth 1987, no writ); *McInnes v. Yamaha Motor Corp., U.S.A.*, 659 S.W.2d 704, 708 (Tex. App.—Corpus Christi 1983), *aff'd*, 673 S.W.2d 185 (Tex.1984), *cert. denied*, 469 U.S. 1107, 105 S.Ct. 782, 83 L.Ed.2d 777 (1985). The jury quite plausibly could have declined to accept David's and Shelley's testimony because of the evidence they failed to present. *Dillard's Dept. Stores, Inc. v. Strom*, 869 S.W.2d 654, 657 (Tex.App.—El Paso 1994, writ dism'd by agr.) (failure to produce important evidence within party's control raises presumption that the evidence, if produced, would be unfavorable). The Lances did not submit any medical records from the Waxahachie hospital to indicate that the treating medical professionals discovered any injuries to David's shoulder or face, or that they removed any glass from his left hand. Neither did the Lances offer any testimony from these medical professionals. The jury also may have wondered why Trooper Applewhite, who witnessed the accident and drove David to the hospital, was questioned about the occurrence of the accident but was not asked whether he noticed any injuries to David afterward. The verdict indicates that the jury chose not to believe the Lances'

testimony on these injuries and found that David had suffered no damages. We may or may not agree with the Lances' assertions that David was so injured, but the court on appeal does not sit as a thirteenth juror in factual sufficiency cases, *Mohnke*, 915 S.W.2d at 590, and we do not "find" facts that the jury failed to find. *Transport Ins. Co. v. Faircloth*, 898 S.W.2d 269, 281 (Tex.1995) (citing *Pool*, 715 S.W.2d at 634). Our job is only to review the record to determine if the evidence is factually sufficient to support the jury's findings, and we conclude that the evidence in the record before us supports the jury's implied finding that David suffered no damages for the injuries to his hand, shoulder and face as a result of the accident. *See id.*

■ Concerning the allegations of sleeplessness, the only evidence that David was having trouble sleeping came from him and Shelley. The jury was free to disbelieve this testimony just as it was free to disbelieve the testimony that David had suffered injuries to his left hand, shoulder and face.

■ Concerning the allegations of David's restricted movement, there was additional evidence submitted that David was suffering from pre-existing physical injuries that may have caused these alleged physical limitations. First, an efficiency report created in April 1991 by David's former employer, the United States Army, indicated that David had been "profiled," a term indicating that a person is physically unable to perform the physical regimen the Army requires of all of its soldiers. Second, Jerry Simmons, an occupational therapist, testified that David was suffering from enough pain to cause him to be profiled.

USAA, however, controverted this evidence. Evidence was submitted that David previously had trouble with a knee, his pelvis and his neck prior to March 1991 and that these earlier injuries may have been what caused David to be profiled. In addition, the report that indicated that David had been profiled also indicated that David's injuries did not prevent him from performing his duties as an Army chaplain. Concerning Simmons's testimony, USAA also demonstrated that David only sought assistance

from Simmons approximately two weeks before trial and that he did so only at the behest of his trial attorney so that his diagnosis could possibly be used at trial. This fact was made known to Simmons by the time of the examination. Therefore, we conclude that the evidence factually supports the jury's implied finding that David suffered no physical limitations as a result of the accident.

Assuming that the accident did actually have some negative impact on David's physical health, we note that the jury nevertheless could have found that the injury was not the cause for his job separation and that it had no effect on his ability to practice his vocation and live his life. The Lances argued that the physical limitations he incurred resulted in the Army's deciding not to renew his commission because David could no longer meet the physical performance requirements. USAA, however, offered testimony from Jose Antonio Ojeda, an employee of the federal government who handles the severance of Army personnel at Fort Hood, that David's severance could very well have been the result of the military's downsizing efforts that had recommenced soon after the time the Persian Gulf War ended in early 1991. Moreover, once David was separated from the Army, the evidence indicated that he was physically able to continue in his career as a preacher, first at a Baptist church in Amherst and then one in Lubbock, and that he was physically able to continue his education as was shown by the completion of his studies for a doctor of ministry degree through the Luther Rice Seminary in Atlanta, Georgia.

The Lances also contend that they suffered a breach in their marital relationship after the accident due to the change in David's character brought on by the injuries he suffered in the accident. Again, the only evidence of marital disharmony came from the Lances, themselves. The jury was not obligated to believe their testimony.

■ Besides just the pure question of whether the Lances actually suffered some marital difficulties after the accident, the jury also was required to answer the ques-

tion of whether, assuming that there were some marital difficulties, the accident caused them. *Morgan v. Compugraphic Corp.*, 675 S.W.2d 729, 731 (Tex.1984); *Upjohn Co. v. Freeman*, 885 S.W.2d 538, 545 (Tex.App.—Dallas 1994, writ denied).

The record reveals that there was controverting evidence submitted by the parties on the reasons for David's and Shelley's alleged marital disharmony. Shelley testified that approximately six months after the accident, David had trouble remembering things and that he frequently became disoriented. Shelley further testified that when she would confront David with these instances of memory loss, David often became argumentative. Shelley did not indicate, however, that her marriage to David was under any danger of disintegrating at this time. Shelley later testified that approximately nine months after the accident, David became uncommunicative, quiet and withdrawn, and that she began to sense feelings of hostility from David that she had not noticed before in their twelve and a half years of marriage. Shelley related that these feelings of hostility culminated in an incident in the spring of 1994 when David allegedly "threw" his and Shelley's seven year-old son, Jonathan, against a wall and yelled at him apparently for throwing a Nerf-brand ball around the house. According to Shelley, David had never been physically confrontational in the past. The incident with Jonathan made Shelley fear for her safety by living with David, so she moved into another bedroom in their home and began to keep her and David's finances separate whereas they had previously conducted their financial affairs together as a unit. Following the incident, she and David both sought counseling apparently for their marital problems, and David sought further help from medical professionals to help him with his behavioral problems.

David's new-found feelings of anger, however, may have been caused not by the accident but by his forced separation from the military, which essentially brought an end to his boyhood dream of being an Army chaplain, and, as we concluded above, the jury could well have decided that David's separation from the military was the product of the Army's efforts to downsize, not because of any physically debilitating conditions brought upon David. Therefore, the facts in the record support the jury's implied finding that it rejected the Lances' loss-of-consortium claim on the causation issue. *See Morgan*, 675 S.W.2d at 731; *see also Ortiz*, 917 S.W.2d at 772.

We find the facts in the record to be factually sufficient to support the jury's rejection of the Lances' claims. Their single point of error is overruled, and the judgment is affirmed.

VANCE, J., dissents.

VANCE, Justice, dissenting.

I dissent because I believe that the jury's failure to find damages for past physical pain is so against the great weight and preponderance of the evidence that it clearly demonstrates bias. *See Pool v. Ford Motor Co.*, 715 S.W.2d 629, 635 (Tex.1986).

The jury determined that each party was 50% responsible for the collision of the vehicles. The jury then found that (1) Lance suffered no damages for physical pain and mental anguish or for lost earnings and (2) Shelly Lance suffered no damages for lost consortium. The jury was instructed in each question to consider both past and future damages. Without examining whether the jury acted within its authority in failing to find damages for physical pain in the future, for past or future mental anguish, for any lost earnings, or for past or future lost consortium, I believe that the evidence overwhelmingly shows that Lance suffered past physical pain, and thus the jury's failure to award any such damages demonstrates its bias against him. *Id.*

Lance testified without contradiction that as a result of the accident his left hand was bleeding and that glass had to be removed from it. He said that he hit the air bag, which was "not soft," and that his seat was "torqued totally out of kilter, twisting me from the front left down on impact, twisted, apparently my spinal area." The ambulance driver told him there was not enough room in the ambulance for him, so he asked the DPS officer at the scene to take him to the hospi-

tal. He said that during the ride to the hospital he "almost blacked out. I was not physically with it at the time." At the hospital, medical personnel removed the glass from his hand, gave him medication, ice packs, and a sling for his shoulder. He said that he wanted to be admitted to the hospital because he "was having problems in focusing and I was having problems with [a] headache at that time from my head." Nevertheless, he was treated and released.

Two days later Shelly took Lance to Darnell Medical Center, a military hospital at Fort Hood. There, they were told that he would not be treated because of the limited number of doctors available, all others having been assigned to the war in Iraq. He said that he was "losing consciousness." The next day Shelly took him to the Troop Medical Clinic at Fort Hood, where he was given "general medications for pain." On his second trip to the clinic, he was "given a temporary profile at that time to go home and rest."

He testified that he was treated by Dr. Guttikonda for a period of six months, but had to discontinue that after the personal injury protection allowance under his automobile insurance policy was exhausted. He said that he continued to take "a lot of Motrin, a lot of other over-the-counter pain relievers." He continued to take pain medication for at least nine more months, when the Veteran's Administration did a "series of tests to see about spinal injury and what was going on."

He said that the pain he was experiencing at the time of trial, which he attributed to the accident, included a burning in his lower back, pain in his neck, numbness in his left hand, burning in his right fingers and thumb, and a sciatic problem in his left leg. He said that he had "good days and bad days," but the pain had been "pretty consistent."

Lance further testified that his condition resulted in his eventual release from the Army, even though he wanted to stay on active duty.

Jerry Simmons, a vocational rehabilitation specialist who did an evaluation of Lance in 1995, testified that he reviewed Lance's med-

ical records and that the series of tests that he ran yielded results that were consistent with those records. He said that Lance had an orthopedic disability that was causing him pain when he performed tasks like pushing, pulling, lifting, and carrying. On cross-examination, Simmons said that Dr. Guttikonda had not recorded any complaints of pain by Lance as early as June of 1991.

Shelly Lance testified that her husband had not complained of back pain or neck pain prior to the accident. She said that when she saw him in the emergency room in Waxahachie he had ice packs, blue marks and cuts on his hands, and that his face was swollen. She said that over the next two days he was very stiff, could not get his legs to straighten out completely, was very bruised, and his neck and face remained swollen. After visiting the Troop Clinic, he continued to have physical limitations. She said "he could not move around well. He had a very hard time walking. He was limping. He could not stand up straight. He could not sit down in a chair for any length of time. He had a hard time laying down. He could not sleep." During "several" return visits to the Troop Clinic, he continued to complain of pain. He received physical therapy during the six months he was treated by Dr. Guttikonda. At the end of that course of treatment, he was still having pain, she said. She also said that he "has never had a time where he was completely, totally out of pain," but it became "more manageable."

USAA's evidence about problems that Lance had had with his back and knee raised doubts about whether the injuries he received in the accident were the cause of his release from the military. Some evidence indicated that he stopped complaining of pain in June of 1991. No evidence, however, contradicted Lance's or Shelly's testimony about the amount of pain he had suffered as a result of the accident between the date of the accident and June of 1991. Thus, I conclude that the jury's refusal to award any sum for damages for past physical pain was contrary to the great weight and preponderance of the evidence and clearly demonstrates bias against Lance's claim. *See id.; Hammett v.*

*Zimmerman,* 804 S.W.2d 663, 664 (Tex. App.—Fort Worth 1991, no writ).

I would reverse the judgment and remand the cause for another trial.[1]

---

**1.** Reversal would also result if we applied the "zero damages rule" that was criticized by Justice Gonzales and Rob Gilbreath in *Appellate* *Review of a Jury's Finding of Zero Damages,* 54 Tex.B.J. 418 (1991).