In re Alpha Tippens Jr.















IN THE
TENTH COURT OF APPEALS
 

No. 10-00-390-CR

IN RE ALPHA TIPPENS, JR.

 

 Original Proceeding
                                                                                                                

MEMORANDUM OPINION
                                                                                                                

      On December 4, Alpha Tippens filed a petition for writ of habeas corpus with this court. This
court does not have original habeas jurisdiction in criminal law matters. Ex parte Hearon, 3
S.W.3d 650 (Tex. App.—Waco 1999, orig. proceeding) (citing Dodson v. State, 988 S.W.2d 833,
835 (Tex. App.—San Antonio 1999, no pet.); Sanders v. State, 771 S.W.2d 645, 650 (Tex.
App.—El Paso 1989, pet. ref’d)). Accordingly, we dismiss Tippens’ habeas application for want
of jurisdiction.

                                                                       PER CURIAM

Before Chief Justice Davis,
          Justice Vance, and
          Justice Gray
Appeal dismissed
Opinion delivered and filed January 31, 2001
Do not publish



 justify">                                                                                                                

          The appellee, Thomas Carroll Cockrum, a roofing inspector employed by the Waco
Independent School District, tripped over an air conditioning belt as he was stepping onto the roof
at the Waco Ninth Grade Center, lost his balance, and fell over the side of the school. Landing
on his feet after the two-story fall, Cockrum shattered many of the bones in his feet and thereby
suffered permanent disabilities. Cockrum sued the appellant, Jacobs-Cathey Co., an air-conditioning servicing business, for failing to remove the air conditioning belt after it had
completed a service job on the roof eight months earlier. A jury found Jacobs-Cathey wholly
liable for the accident and awarded Cockrum $325,000 in damages. The trial court signed a
judgment in conformity with the verdict three weeks later.
          Through five points of error, Jacobs-Cathey raises two issues on appeal—the legal and
factual sufficiency of the evidence to support the findings (1) that a Jacobs-Cathey employee failed
to remove an air conditioning belt that it had replaced, and (2) that a Jacobs-Cathey employee left
the air conditioning belt that Cockrum tripped over. We affirm.
I. Factual Background
          In January 1993, Cockrum was employed by Waco ISD as a roofing inspector. His job
duties required him to inspect the roofs of the district's twenty-seven campuses as well as its
administrative buildings and sports facilities. When a roof on one of these buildings would leak,
it was Cockrum's job either to make the necessary repairs or to report the leak to a superior so that
an independent contractor could be located to make the repairs.
          In the morning of January 8, 1993, Cockrum responded to a complaint that the roof at the
Ninth Grade Center was leaking. He climbed onto the roof and determined that a seal around a
drain on the roof needed to be patched, and he contacted A.C. Parsons Roofing, with whom Waco
ISD had a contract to make various roofing repairs, to fix the leak. A.C. Parsons informed
Cockrum that an employee, Rusty Wooley, would be at the school at around 1:00 or 1:30 p.m.
          Cockrum left the Ninth Grade Center, but returned shortly before 1:00 to meet Wooley. 
Cockrum set his ladder on the south side of the building and secured it to prevent it from slipping. 
He put on his boots and climbed the ladder. Once he reached the top of the building, he stepped
off from the ladder and onto the roof. He then took a step with his right foot and attempted
another with his left. As he brought his left foot forward, his feet became entangled and he lost
his balance. Cockrum fell backwards and head-first over the side of the roof. As he was falling,
Cockrum grabbed the ladder, enabling him to turn himself upright. Cockrum, however, continued
falling for approximately twenty feet until he landed on his feet.
II. Duty
          Before proceeding with a discussion of the issues, we must address the question of whether
Jacobs-Cathey owed a duty of care to Cockrum. In its original brief, Jacobs-Cathey presumed that
Cockrum raised two theories of recovery at trial, namely, simple negligence and premises liability. 
In his "Appellee's Brief," Cockrum responded that he did not sue Jacobs-Cathey for premises
liability, but only for simple negligence. Cockrum indicated, however, that Jacobs-Cathey bore
a duty to him within this simple negligence theory both to remove the air conditioning belts it left
on the roof and the air conditioning belts left on the roof by other parties. Cockrum contended
that Jacobs-Cathey, pursuant to (1) a company policy of removing debris from its work sites
regardless who had left it there and (2) a common-law duty imposed upon air conditioner
repairmen to remove other parties' debris from their own work sites, assumed this duty to remove
air conditioning belts left by third parties. In a reply brief, Jacobs-Cathey asserted that the only
duty it had to Cockrum was to remove its own air conditioning belts.
          It is apparent from this development in the arguments that Cockrum, by disavowing any
intention to sue Jacobs-Cathey on a premises liability theory, has restricted his means of recovery
to simple negligence. It is also clear that, because the parties agree that Jacobs-Cathey bore a duty
to Cockrum to remove any air conditioning belts that its own employees may have left on the
Ninth Grade Center's roof, Jacobs-Cathey may be liable to Cockrum if Cockrum tripped over an
air conditioning belt that one of its own employees left on the roof. The remaining question to be
answered, however, is whether Jacobs-Cathey employees bore a duty to remove any air
conditioning belts that may have been left on the roof by another party. 
a. Company Policy
          The Supreme Court has stated:
There are many instances in which it may be said, as a matter of law, that there is a duty
to do something, and in others it may be said, as a matter of law, that there is no such
duty. Using familiar illustrations, it may be said generally, on the one hand, that if a party
negligently creates a dangerous situation it then becomes his duty to do something about
it to prevent injury to others if it reasonably appears or should appear to him that others
in the exercise of their lawful rights may be injured thereby. On the other hand, it may
be said generally, as a matter of law, that a mere bystander who did not create the
dangerous situation is not required to become the good Samaritan and prevent injury to
others.

Smithkline Beecham Corp. v. Doe, 903 S.W.2d 347, 353 (Tex. 1995) (quoting Buchanan v. Rose,
138 Tex. 390, 159 S.W.2d 109, 110 (1942)). As a general rule, mere bystanders have no duty
to remedy a dangerous condition created by someone else. See id.; Otis Eng’g Corp. v. Clark,
668 S.W.2d 307, 309 (Tex. 1983). However, certain relationships, such as master-servant,
parent-child, or employer-employee, do impose, as a matter of law, certain duties to undertake
affirmative acts in special circumstances for the benefit of another. See Greater Houston Transp.
Co. v. Phillips, 801 S.W.2d 523, 525 (Tex. 1990); Otis, 668 S.W.2d at 309. Moreover, when
there would otherwise be no duty on the part of the defendant to the plaintiff, the defendant
assumes a duty of care to remedy any dangerous conditions that he, himself, creates. The Science
Spectrum, Inc. v. Martinez, 941 S.W.2d 910, 912 (Tex. 1997).
          Jacobs-Cathey agrees that if it created a dangerous condition on the Ninth Grade Center's
roof, it had a duty to remedy the condition. Jacobs-Cathey, however, asserts that it had no duty
to remove anyone else's air conditioning belts. Cockrum argues that Jacobs-Cathey's internal
policy of removing any-and-all debris from a completed work site, whether or not the debris was
left by Jacobs-Cathey employees, resulted in a "special relationship" that enjoined upon it a duty
to third parties who might be injured from debris left by a party other than Jacobs-Cathey.
          The testimony at trial from several Jacobs-Cathey representatives reveals that Jacobs-Cathey employees frequently removed debris left by other parties because it took a minimal effort
to remove the debris and because the potential for injury to others who might later visit the work
site was great. However, a defendant's policy to remedy dangerous conditions he may come
across does not impose a legal duty on him to these third parties. See Estate of Catlin v. General
Motors Corp., 936 S.W.2d 447, 451 (Tex. App.—Houston [14th Dist.] 1996, no writ) (on
rehearing). While the members of a corporation perhaps should be lauded on a personal level for
sua sponte establishing policies requiring its employees to affirmatively remedy dangerous
conditions created by others, the enactment of these policies is insufficient to alter the legal rule
that a mere bystander owes no duty of care to make safe a dangerous condition negligently or
intentionally created by a third party.
          We therefore conclude that any policy Jacobs-Cathey maintained requiring its employees
to remove debris left at its work sites by other parties did not impose upon Jacobs-Cathey a duty
to third parties injured by this unremoved debris.
b. Common Law Duty
          Cockrum also asserts that Jacobs-Cathey employees, as air conditioner repairmen, owe a
duty of care to make their work sites safe to third parties by remedying dangerous conditions
created by other persons because of the highly technical and specialized nature of their profession. 
Cockrum cites Remuda Oil & Gas Co. v. Nobles, 613 S.W.2d 312, 316 (Tex. Civ. App.—Fort
Worth 1981, no writ), for the proposition that certain professionals, such as medical doctors, due
to the nature of their calling, possess a duty to provide care to parties even when the professional
is a bystander. Nobles, however, stands only for the proposition that the standard of care for
medical doctors and other professionals may be higher than a simple reasonable-person standard. 
See id. Moreover, we are aware of no authority that imputes to medical doctors or any other
professionals a duty of care to another party when the doctor or other professional is a mere
bystander. Similarly, air conditioner repairmen bear no duty to remove from their work sites
debris left by another party even though that repairman may realize the debris poses a danger to
other people who may later visit the work site. Thus, we conclude that Jacobs-Cathey employees
bore no common law duty to remove debris from the roof of the Ninth Grade Center that was left
by some other party.
III. Legal and Factual Sufficiency of the Evidence
          In its first, second, third, and fifth points of error, Jacobs-Cathey contends that the trial
court erred in overruling its motions for instructed verdict and judgment notwithstanding the
verdict. Motions for instructed verdict and judgment notwithstanding the verdict when brought
by the defendant question whether there is any evidence to support each of the elements of the
plaintiff/non-movant's cause or causes of action. Therefore, in reviewing the denial of these
motions, we utilize the legal sufficiency standard of review. When a complaining party raises a
"no-evidence" point challenging the legal sufficiency of the evidence to support a finding that
favors the party who had the burden of proof on that finding, we must sustain the finding if,
considering only the evidence and the inferences supporting the finding and disregarding evidence
and inferences to the contrary, any probative evidence supports it. Browning-Ferris, Inc. v.
Reyna, 865 S.W.2d 925, 928 (Tex. 1993); American Derringer Corp. v. Bond, 924 S.W.2d 773,
786 (Tex. App.—Waco 1996, no writ). If there is more than a scintilla of probative evidence in
the record to support the finding, the "no evidence" challenge fails. Stafford v. Stafford, 726
S.W.2d 14, 16 (Tex. 1987). Evidence is merely a scintilla when it is so weak as to do nothing
more than create a mere surmise or suspicion of a fact. Kindred v. Con/Chem, Inc., 650 S.W.2d
61, 63 (Tex. 1983).
          Arguing in the alternative, Jacobs-Cathey asserts that, while the evidence may be legally
sufficient to support the judgment, it is nevertheless factually insufficient. In reviewing a factual
sufficiency point, we examine all of the evidence in the record, both for and against the judgment,
in determining whether the finding in question is so against the great weight and preponderance
of the evidence as to be manifestly wrong and unjust. Ortiz v. Jones, 917 S.W.2d 770, 772 (Tex.
1996); In re King's Estate, 150 Tex. 662, 244 S.W.2d 660, 661 (1951); Lance v. USAA Ins. Co.,
934 S.W.2d 427, 428 (Tex. App.—Waco 1996, no writ).
          Cockrum's simple negligence theory required proof of (1) facts that gave rise to Jacobs-Cathey's duty not to leave air conditioning belts on the Ninth Grade Center's roof, (2) that Jacobs-Cathey breached that duty, and (3) that Cockrum suffered injuries as a proximate result of Jacobs-Cathey's breach of that duty. See Phillips, 801 S.W.2d at 525. We have found that Jacobs-Cathey owed Cockrum a duty, and Jacobs-Cathey makes no argument against the assessment of
damages. Instead, Jacobs-Cathey restricts its complaints to the breach and proximate cause
elements of Cockrum's cause of action.
a. Breach
          The following evidence addresses whether a Jacobs-Cathey employee breached his duty
to remove the air conditioning belt that caused Cockrum to trip and fall off the roof at the Ninth
Grade Center. We note, initially, that the only evidence that Cockrum tripped over a belt was a
hearsay statement from an onlooker who reportedly commented to Cockrum after the fall,
"There's a belt wrapped around your feet." 
          Over the course of several days beginning April 24, 1992, two employees of Jacobs-Cathey, Michael Zipperlen and Shawn Howard, replaced approximately twelve air conditioning
belts on several air-conditioning units located on the roof of the Ninth Grade Center. Zipperlen
testified that when he climbed onto the roof, he noticed a lot of debris, including a hub cap, tennis
balls, fuses, and some air conditioner parts. With regard to the air conditioner parts, Zipperlen
particularly noticed that one of the units appeared as if it had been completely disassembled with
the parts scattered around the unit. Zipperlen did not recall seeing any air conditioning belts on
the roof on April 24; however, Zipperlen also stated that he may have seen some belts but he
simply could not remember at the time of trial that he had. Zipperlen testified that it was Jacobs-Cathey's policy to leave a clean work site after completing a job and that he and Howard,
whenever they worked together, would pick up and haul away any trash they had left. In
reference to this particular job, Zipperlen testified that he remembered picking up trash on the roof
and throwing it over the side where he and Howard later retrieved it, stowed it in their truck, and
hauled it away. Zipperlen stated that he and Howard attempted to pick up all of their trash, but
that it was possible they missed a belt. Zipperlen stated that the chance that he and Howard
missed a belt was "very low" because they made an effort to remove all of the trash generated
from the job.
          Deposition testimony from Rusty Wooley, the A.C. Parsons employee, was offered that
he had been on the roof at the Ninth Grade Center with Jacobs-Cathey employees once or twice
before the accident and that he had seen air conditioning belts lying on the roof after the Jacobs-Cathey employees left. Wooley stated that he never saw a Jacobs-Cathey employee place an air
conditioning belt on the roof, and he admitted that he had not checked the roof prior to the time
the Jacobs-Cathey employees were on it to determine if there were any air conditioning belts on
the roof at an earlier time. Wooley further stated that immediately after the accident he inspected
the portion of the roof from where Cockrum had fallen and that he saw one or two air conditioning
belts lying within ten feet of that location. Wooley testified that A.C. Parsons employees
occasionally worked on the wiring of the air conditioning units, but that they never changed or
worked on any air conditioning belts. Wooley further stated that Jacobs-Cathey employees were
known for failing to remove debris from their work sites at other Waco ISD buildings.
          Ray Iglehart, a maintenance supervisor for Waco ISD, testified that as he was waiting for
emergency medical personnel to arrive to attend to Cockrum, he climbed onto the roof and noticed
one air conditioning belt in the area where Cockrum had set his ladder. Photographs of the roof
taken three to five days after the accident were also introduced into evidence showing four air
conditioning belts lying on the roof. 
          Andrew Van Dulock, maintenance supervisor in charge of heating and air conditioning for
Waco ISD, testified that prior to April 1992 Waco ISD employees replaced air conditioning belts
on the Ninth Grade Center's roof and that it was possible that a Waco ISD employee may have left
the belt that Cockrum tripped over on January 8, 1993. Dulock indicated that Waco ISD
employees had replaced air conditioning belts on the roof as late as September 3, 1991. 
Testimony from Dulock and the admission of work orders on the roof for the twelve months
preceding the accident indicated that no air conditioning belts were replaced by anyone from April
24, 1992, until January 8, 1993. Dulock testified that, in his experience, Jacobs-Cathey
employees had not been "sloppy" in servicing Waco ISD air conditioning units or in cleaning up
their work sites afterwards.
          In summary, the record indicates that eight months prior to the accident Jacobs-Cathey
employees Zipperlen and Howard replaced approximately twelve air conditioning belts on several
air conditioning units on the Ninth Grade Center's roof. No one changed any air conditioning
belts between the time Zipperlen and Howard performed these repair jobs and the time Cockrum
fell from the roof. Zipperlen testified that when he first climbed onto the roof in April 1992 to
service the several air conditioning units situated thereon, he noticed varied types of debris located
on the roof, but he could not recall seeing any air conditioning belts.
          Evidence was also adduced that a Waco ISD employee, or an employee of some
independent contractor other than Jacobs-Cathey, may have left the air conditioning belt that
Cockrum tripped over because Waco ISD employees and independent contractors other than
Jacobs-Cathey had changed a number of air conditioning belts on the Ninth Grade Center's roof
prior to April 1992. Jacobs-Cathey maintains, therefore, that the conclusion that a Jacobs-Cathey
employee left the belt Cockrum tripped over is just as probable as the conclusion that some other
party left the injurious air conditioning belt. Without the evidence preponderating in favor of a
finding that the blame falls on a Jacobs-Cathey employee, Jacobs-Cathey contends that the
evidence is necessarily legally and factually insufficient to support the judgment.
          The proof brought at trial of who left the injurious air conditioning belt is circumstantial. 
When circumstantial evidence is relied upon, and the circumstances are equally consistent with
either of two facts, no more than a scintilla of evidence supports a finding and a "no evidence"
point must be sustained. Continental Coffee Prods. Co. v. Cazarez, 937 S.W.2d 444, 450 (Tex.
1996). We disagree, however, with Jacobs-Cathey that the likelihood of a Jacobs-Cathey
employee leaving the air conditioning belt over which Cockrum tripped is just as probable as the
conclusion that some other party was responsible.
          Zipperlen testified that he could not recall seeing any air conditioning belts on the roof in
April 1992 when he serviced the air conditioning units contained thereon. Zipperlen also stated
that he may have seen some but that he could no longer remember. Zipperlen was, however, able
to identify a number of objects on top of the roof, namely, tennis balls, a hub cap, some fuses, and
other air conditioner parts. Accordingly, the jury may have considered his memory skills
sufficiently sound that he would have recalled seeing air conditioning belts on the roof if, indeed,
there had been any. In addition, the photographs of the roof taken three to five days after the
accident reveal a relatively clean roof with only a few types of debris located on it. Fuses, nuts
and bolts, rags, and air conditioning parts can be seen, but prominent in the photographs are
several air conditioning belts. They are relatively large in comparison to the other debris on the
roof and are readily noticeable. The jury could have determined that the type of debris indicated
in the photographs is the type of debris that was located on the roof in April 1992 after Zipperlen
and Howard serviced the air conditioning units. Thus, the jury could have concluded that
Zipperlen would have noticed the air conditioning belts on the roof at the time had there actually
been any and that, as a necessary consequence, any belts after April 1992 were left by either
Zipperlen or Howard.
          Wooley testified that Jacobs-Cathey employees in the past had left their own debris on
work sites after finishing different servicing jobs. The jury could have believed from this
testimony that Jacobs-Cathey did not insist that its employees make certain all of their debris was
removed from a work site upon completion and that Zipperlen's testimony that all of the air
conditioning belts replaced on the Ninth Grade Center's roof in April 1992 were removed when
they finished the job was not accurate. It is true that Dulock in his testimony indicated that he had
experienced no problems with Jacobs-Cathey employees failing to remove their own debris from
their work sites. But the record reveals that Wooley was Waco ISD's roofing supervisor and
therefore probably visited the roofs of Waco ISD's buildings more frequently than Dulock. See
Lance, 934 S.W.2d at 428-29 (in factual sufficiency cases, reviewing court shall neither interfere
with jury's resolution of conflicts in the evidence nor pass on the weight and credibility of the
witnesses). All of these facts, taken in whole, could have led the jury to conclude that the belt
over which Cockrum tripped was left by a Jacobs-Cathey employee. The dissent disagrees with
our analysis and opines that the evidence is both legally and factually insufficient to support the
judgment. In response to the dissent's discussion of the factual sufficiency of the evidence, we
agree that the evidence supporting the jury's finding is not abundant, but we aver that, in affording
the jury sufficient deference in its resolution of the factual issues before it, the conclusion
necessarily follows that the finding is sufficiently supported by the evidence.
          In Lance we considered the issue of "how much" deference juries should be provided by
an appellate court when it reviews the factual sufficiency of the evidence.


 934 S.W.2d 427. We
wrote that the reviewing court shall neither interfere with the jury's resolution of conflicts in the
evidence nor pass on the weight and credibility of the witnesses' testimony. Id. at 428-29. We
recognized that the court on appeal is not to retry the case or otherwise substitute its judgment or
opinion for that of the trier of fact and that only when the judgment is clearly wrong and unjust,
after giving due deference to the jury's determinations of the facts, may the reviewing court
reverse the judgment. Id. at 429 (citing Ortiz v. Jones, 917 S.W.2d at 772). We maintained that
the jury is free to believe or disbelieve any witness, regardless of whether the witness's testimony
is later controverted, and that the court on appeal does not sit as a thirteenth juror in factual
sufficiency cases. Id. at 429-30. We ascertained our job in undertaking a factual sufficiency
review as only to review the record to determine if the evidence is factually sufficient to support
the jury's findings. Id. at 430. And while we did not say so in Lance, a comment is warranted
that, while the appellate court is blind to the expressions and mannerisms of the witnesses, the trier
of fact has:
the opportunity to observe the demeanor of the witnesses and to weigh their testimony; to
weigh and decide whether the recollections of long ago were accurate and whether they
contained the ring of truth and credibility. The [trier of fact has] the opportunity to
carefully observe all of the facial expressions, demeanor, tenor, mental awareness and
power of recollection[.]

Gunter v. Molk, 663 S.W.2d 674, 676 (Tex. App.—Beaumont 1983, writ ref'd n.r.e.); see Gunn
Buick, Inc. v. Rosano, 907 S.W.2d 628, 631 (Tex. App.—San Antonio 1995, no writ). A
reviewing court fails to appreciate the many and varied means a jury resolves conflicts in the
testimony when it ignores the physical exhibitions of truth and falsity that the jurors identify in the
witnesses but are left unrecorded in the "cold record." Rosano, 907 S.W.2d at 631.
          It is the majority's position that if a proper application of the principles described in Lance,
Gunter, and Rosano are applied, the conclusion must be reached that the jury's finding in the case
before us that a Jacobs-Cathey employee left the belt over which Cockrum tripped is legally and
factually supported by the evidence.
b. Proximate Cause
          In its fourth and fifth points of error, Jacobs-Cathey contends that the trial court erred in
overruling its motions for instructed verdict and judgment notwithstanding the verdict insofar as
these motions relate to the question of causation. Essentially, Jacobs-Cathey maintains that there
is no evidence to support the jury's implied finding that the negligent acts of one of its employees
in leaving an air conditioning belt on the Ninth Grade Center's roof proximately caused
Cockrum's injuries.
          The record is clear that the actual belt at issue in this case was never found. From this
fact, Jacobs-Cathey argues that it is thereby impossible to determine whether the belt was left by
a Jacobs-Cathey employee. We disagree. We held, above, that the evidence is legally and
factually sufficient to support the finding that Jacobs-Cathey breached its duty to remove the belts
it replaced from the air conditioning units on the Ninth Grade Center's roof in April 1992. In this
discussion, we noted evidence in the record that the jury may have believed from Zipperlen's
testimony that there were no air conditioning belts on the roof in April 1992 when he and Howard
serviced the air conditioning units on the roof at that time. From this finding, the jury may have
concluded that the only source of any belts on the roof at the time of Cockrum's accident, then,
was Jacobs-Cathey. 
          Jacobs-Cathey argues further in its fourth point that the evidence is legally and factually
insufficient to support the jury's finding that Jacobs-Cathey's negligence proximately caused
Cockrum to fall from the Ninth Grade Center's roof. Jacobs-Cathey correctly points out that
proximate cause consists of two factors—cause in fact and foreseeability. Travis v. City of
Mesquite, 830 S.W.2d 94, 98 (Tex. 1992); Peerenboom v. HSP Foods, Inc., 910 S.W.2d 156,
164 (Tex. App.—Waco 1995, no writ). Jacobs-Cathey does not contend that Cockrum's injuries
were not foreseeable; instead, it maintains only that the circumstances of his injury were too
attenuated from its acts of negligence to constitute the cause in fact of his injuries. The test for
cause in fact is whether the defendant's act or omission was a substantial factor in bringing about
the injury which would not otherwise have occurred. Prudential Ins. Co. of Am. v. Jefferson
Assocs., Ltd., 896 S.W.2d 156, 161 (Tex. 1995); Peerenboom, 910 S.W.2d at 164-65. In
particular, Jacobs-Cathey maintains that the evidence is legally and factually insufficient to support
the jury's implied findings on causation because the circumstantial evidence is too "meager" to
present a causal connection between Jacobs-Cathey's acts of negligence and Cockrum's injuries.
          We have already concluded that the evidence is legally and factually sufficient to support
the jury's findings that a Jacobs-Cathey employee left an air conditioning belt on the Ninth Grade
Center's roof and that it was over this belt that Cockrum tripped, which caused him to then fall
from the roof. There is a direct connection between the belt's having been left on the roof and
Cockrum's tripping over it. There were no intervening causes or a string of causes-and-effects
that ultimately led to Cockrum's tripping over the belt. Because this relationship between Jacobs-Cathey's negligence and Cockrum's tripping over the belt was direct, we conclude that the
evidence is legally and factually sufficient to support the jury's implied finding that Jacobs-Cathey's negligence was a cause in fact, foreseeable, and therefore a proximate cause, of
Cockrum's injuries.
          Jacobs-Cathey's points of error are overruled, and the judgment is affirmed.
 
                                                                                 BOBBY L. CUMMINGS
                                                                                 Justice

Before Chief Justice Davis,
          Justice Cummings, and
          Justice Vance
          (Justice Vance concurring and dissenting)
Affirmed
Opinion delivered and filed June 4, 1997
Publish