

# NUMBER 13-16-00626-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

---

**MICHAEL BRIDGES,**                                                                **Appellant,**

**v.**

**THE LAKES AT KING ESTATES, INC., RONALD VOSS, AND RICHARD VOSS,**                        **Appellees.**

---

### On appeal from the 347th District Court of Nueces County, Texas.

---

# MEMORANDUM OPINION

**Before Chief Justice Valdez and Justices Contreras and Hinojosa
Memorandum Opinion by Chief Justice Valdez**

Appellant Michael Bridges filed suit against appellees Ronald Voss and Richard Voss for, among other things, breach of fiduciary duty to The Lakes at King Estates (the Company)—a real estate development company that Bridges and the Vosses owned in equal shares. The jury assessed damages against the Vosses in the amount of $1 each.

By three issues, Bridges contends: (1) the jury's damage award of $2 dollars is legally and factually insufficient; (2) the business judgement rule does not apply; and (3) all court costs should be taxed against the Vosses. We affirm.

## I. BACKGROUND

The Company acquired a loan to purchase undeveloped real property, which Bridges and the Vosses personally guaranteed. The Company lacked sufficient funds to repay the loan when it came due; therefore, to raise money to pay the bank debt, the Company sold some of its properties to the Vosses, Bridges, and their related entities. Thereafter, the bank threatened to foreclose on the Company's remaining property if it failed to pay the balance left on the debt. Ronald borrowed money, purchased the land, and paid the debt to the bank, relieving the Vosses and Bridges from personal liability.

Bridges filed suit against the Vosses accusing them of self-dealing by selling the Company's properties for under market value to themselves or to entities they owned. According to Bridges, the properties sold for only $2.75 million even though they were worth $5.89 million. The Vosses filed a counter-suit for breach of fiduciary duty.

The jury found that the Vosses breached their fiduciary duties to the Company and awarded $2.00 dollars to the Company. The jury also found that Bridges breached his fiduciary duty to the Company and awarded $1.00 to the Company. Lastly, the jury found that Bridges had not been provided a reasonable opportunity to examine and copy the Company's records and awarded him $4,875.00 in attorney's fees. This appeal followed.

## II. LEGAL AND FACTUAL SUFFICIENCY

By his first issue, Bridges contends that the evidence conclusively established that he was entitled to $3.14 million dollars in damages. Bridges also argues that award of $2.00

> is against the great weight and preponderance of the evidence because it is well below the minimum range of damages supported by the evidence, meaning there is also no evidence to support the response given. The [$2.00] figure is also manifestly unjust and shocks the conscience; [$2.00] is an unjust damage figure in any case, especially one involving the conveyance of millions of dollars of real property.

## A.    Standard of Review

When, as here, the party with the burden of proof at trial (Bridges) brings a legal sufficiency issue complaining of an adverse finding, the party must show that the evidence conclusively establishes all vital facts in support of the finding sought by the party. *Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 241 (Tex. 2001); *Sterner v. Marathon Oil Co.*, 767 S.W.2d 686, 690 (Tex. 1989). We first examine the record for evidence supporting the adverse finding, ignoring all evidence to the contrary. *Dow Chem. Co.*, 46 S.W.3d at 241; *Sterner*, 767 S.W.2d at 690. If no evidence supports the finding, we next examine the entire record to determine if the contrary proposition is conclusively established as a matter of law. *Dow Chem. Co.*, 46 S.W.3d at 241. Evidence is conclusive "only if reasonable people could not differ in their conclusions, a matter that depends on the facts of each case." *City of Keller v. Wilson*, 168 S.W.3d 802, 816 (Tex. 2005).

When a party with the burden of proof at trial complains that an adverse finding is factually insufficient, the party must demonstrate that the evidence of the adverse finding is so weak or so against the great weight and preponderance of the evidence that it is clearly wrong and unjust. *Dow Chemical*, 46 S.W.3d at 241. In conducting a legal and

3

factual sufficiency review, we must not substitute our opinion on witness credibility for that of the fact finder. *City of Keller*, 168 S.W.3d at 819–20.

## B.    Discussion

At trial, Bridges testified that the Company's properties were worth $5.89 million but were only sold for $2.75 million.[1] Thus, Bridges argued the Vosses made a profit of $3.14 million due to self-dealing. Bridges did not provide any other evidence supporting a finding that the properties were worth $5.89 million.

Ronald testified that after the bank threatened foreclosure of the properties, the Vosses wanted to sell the property to a third party, pay off the debt to the bank, and split whatever profit was left. However, according to Ronald, Bridges refused to do so. Instead, the Company sold the various properties to Bridges, the Vosses, and the related entities owned by them. Ronald explained that pursuant to an agreement with the purchasers of the land, the Company would put up fifty percent of the money to develop the land and receive fifty percent of the net profits from that development.

According to Ronald, Bridges agreed to sell a parcel of property owned by the Company referred to at trial as the Unit 3A property, which included 23.939 acres of land. Ronald stated that Bridges was afforded the opportunity to purchase the Unit 3A property, but he did not do so. The Unit 3A property was purchased by VOJO, a company partly owned by Richard, and the Company received the profits. Bridges testified that he was

---

[1] We note that, although Bridges testified that the properties sold for $2.75 million, the jury was free to disbelieve his testimony. *City of Keller v. Wilson*, 168 S.W.3d 802, 816 (Tex. 2005); *Dunn v. Bank-Tec. South*, 134 S.W.3d 315, 324 (Tex. App.—Amarillo 2003, no pet.) ("[I]t must be remembered that jurors are free to believe or disbelieve any witness, regardless of whether the witness' testimony is contradicted.") (citing *Lance v. USAA, Ins. Co.*, 934 S.W.2d 427, 429 (Tex. App.—Waco 1996, no writ)). And, during his testimony Bridges admitted that he had approximated the price based on the sales documentation of only one of the six properties. Regarding the other properties, Bridges had no sales documentation on which to base his opinion.

not informed of this sale.[2]   However, during cross-examination by the Vosses' trial counsel, Bridges admitted that he knew of the arrangement to sell the Unit 3A property for $529,889 and that he had signed the contract.  Bridges stated that he had agreed to the arrangement in early 2011.

Ronald testified that the sales price of the various properties sold by the company had been based on appraisals that were required by the banks loaning money for the purchases.  Ronald stated that the Company "sold the land at full market price and appraised price."  Ronald said, "The company's plan was to sell the land at appraised value, market value, whatever that is and is pretty close all the time between the market value and appraisal value and sell it so that we not only make money on the land but also have the opportunity to make money on the development."  Ronald emphasized that for each of the properties that the Company sold, the Vosses relied on appraisals that the banks used to set the purchase price.  Regarding another parcel of property, which encompasses sixty-one acres, sold by the Company and purchased by Ronald, Ronald testified that that parcel was sold for the appraised price and the money went to the Company.  The Company then paid off its debt to the bank, avoiding foreclosure.

Bridges testified that the he believed that the properties improperly sold by the Company were worth $5.89 million, or in other words each acre was worth approximately $57,266.[3] However, Ronald testified that each property was sold for the appraised market

---

[2] Bridges testified that he had "no problem" to another sale of land by the Company to Ronald because the sale had been disclosed to him.  In addition, Bridges stated that he had no problem when the Company sold single-family developed properties to the Vosses and that his objections were to the Company's sale of vacant non-developed properties to the Vosses.

[3] At trial, when discussing which properties were worth $5.89 million, Bridges stated that he was referring to the six exhibits "right here on the table."  However, the record does not show which of those documents were on the table.  The trial court states, "The six that he just went over," however, the record shows that Bridges had just discussed five exhibits including Plaintiff's Exhibits 14, 15, 16, 17, and 18.  The

5

value, and Richard testified that, at the time of the sales, the appraised market value of each acre was approximately $25,000. The jury could have believed Richard and disbelieved Bridges about the appraised market value of the property. *See City of Keller*, 168 S.W.3d at 819. The jury could have believed that the properties were worth and sold for the appraised market value as stated by Richard and Ronald and that the properties were not worth $5.89 million. *See id.* Under Richard's valuation, the properties sold by the Company to the Vosses were worth $2.57 million which is well under the $2.75 million that Bridges claims that the Company received. Even if we were to include the value of the Unit 3A property, our analysis would be the same, because Ronald and Richard testified that the Company sold each of the properties for the appraised market value. And, as previously stated, the jury could have disbelieved Bridges that the properties sold for $2.75 million. Therefore, Bridges has not conclusively established all vital facts in support of a finding that the Vosses profited from their self-dealing by $3.14 million. *See Dow Chemical Co.*, 46 S.W.3d at 241; *Sterner*, 767 S.W.2d at 690. Moreover, we cannot conclude that Bridges has demonstrated that the adverse finding is so weak or so against the great weight and preponderance of the evidence that it is clearly wrong and unjust.[4] *See Dow Chemical*, 46 S.W.3d at 242. We overrule Bridges's first issue.

listed exhibits show that the Company sold 102.852 acres which Bridges claimed were improper. Thus, we are left to guess that Bridges meant that the listed exhibits including one exhibit not referenced were worth $5.89 million. The only other property that Bridges stated on direct-examination that he had a problem with being sold was the Unit 3A property, which encompassed 23.939 acres. However, he later testified that he agreed to allow the sale of the Unit 3A property.

In his brief, Bridges does not clarify which properties and how many acres he believes were sold under their market value and states that he testified as to the "fair market value of the property that the Vosses conveyed to themselves. . . ." The evidence showed that Bridges agreed to allow the Company to convey certain property to the Vosses, which would not be included in the calculation of damages. Thus, we will do our best to address the issue.

[4] It appears that the jury awarded nominal damages.

## II. THE BUSINESS JUDGMENT RULE

By his second issue, Bridges attacks question 6 in the jury charge, which applied the business judgment rule.[5]  Question 6 stated, "Were the sales of the subject properties by the Company fair to the corporation and authorized, approved, or ratified by the board of directors or the shareholders."  The jury answered, "Yes."

Bridges argues that question 6 "failed to distinguish between interested versus disinterested directors and shareholders, and was inappropriate because there was harm to the corporation itself."  However, Bridges did not object to the question on that basis, and he did not submit what he contends to be a properly worded question to the trial court.  Thus, any objection on that basis is waived.  *See* TEX. R. CIV. P. 272, 274 ("Any complaints to a question, definition or instruction, on account of any defect, omission, or fault in pleading, is waived unless specifically included in the objections."); *Cruz v. Andrews Restoration, Inc.*, 364 S.W.3d 817, 829 (Tex. 2012) ("Our procedural rules state that a complaint to a jury charge is waived unless specifically included in an objection.").

Next, Bridges argues that the business judgment rule does not apply because there was harm to the corporation itself.  At trial, Bridges did not object to jury question 6 on this basis.[6]  Accordingly, this argument is waived.  The rest of Bridges arguments are multifarious and mostly relate to the previous arguments.  Nonetheless, Bridges posed

---

[5] The business judgment rule protects corporate officers and directors from liability "for alleged breach of duties based on actions that are negligent, unwise, inexpedient, or imprudent if the actions were 'within the exercise of their discretion and judgment in the development or prosecution of the enterprise in which their interests are involved.'"  *Sneed v. Webre*, 465 S.W.3d 169, 178 (Tex. 2015).

[6] At trial, Bridges objected to question 6 on the basis that the business judgment rule does not apply because "there was testimony about self-dealing."  Bridges does not make this argument on appeal.

only one objection to question 6, and none of his remaining appellate arguments re-urge that objection. Thus, those arguments are waived. We overrule Bridges second issue.

### III. COSTS

By his third issue, Bridges contends that the trial court should have recovered his costs in this matter. Specifically, Bridges asserts that he was the prevailing party because he recovered $4,875.00 in attorney fees. The Vosses respond that the trial court's taxing costs against the party incurring same was proper under the law because neither Bridges nor the Vosses were wholly successful in the trial court.

Texas Rule of Civil Procedure 131 states that "[t]he successful party to a suit shall recover of his adversary all costs." TEX. R. CIV. P. 131. We review a trial court's award of costs for an abuse of discretion. *Mitchell v. Bank of Am., N.A.*, 156 S.W.3d 622, 630 (Tex. App.—Dallas 2004, pet. denied). "A trial court does not abuse its discretion in taxing costs against both sides where neither party was wholly successful in that one expected to receive more while the other expected to pay less." *Mobil Producing Tex. & New Mex., Inc. v. Cantor*, 93 S.W.3d 916, 920 (Tex. App.—Corpus Christi 2002, no pet.).

In *Mobile Producing Texas & New Mexico, Inc.*, we concluded that the trial court had not abused its discretion when it awarded costs to both parties. *Id.* We reasoned that "Mobil hoped to recover more under its breach of contract claim" but "it recovered under its unjust enrichment claim," and "[a]ppellees, on the other hand, hoped to pay less by obtaining a take nothing judgment." *Id.*

Here, Bridges and the Vosses each recovered nominal damages for their breach of fiduciary claims, neither party received damages in the amount that each party had hoped to receive. And although Bridges may have received a little more than the Vosses

8

because he also recovered his attorney's fees on his claim that he had not been provided a reasonable opportunity to examine and copy the Company's records, neither party wholly prevailed. *See id.* Thus, we cannot conclude that the trial court abused its discretion when it taxed the costs against the party incurring same. We overrule Bridges's third issue.

## IV. CONCLUSION

We affirm the trial court's judgment.

**/s/ Rogelio Valdez**
ROGELIO VALDEZ
Chief Justice

Delivered and filed the
29th day of November, 2018.